IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2006

**STATE OF TENNESSEE v. YVONNE B. RAGLAND**

**Appeal from the Criminal Court for Knox County**
**No. 79432     Richard R. Baumgartner, Judge**

**No. E2005-02016-CCA-R3-CD - Filed August 14, 2006**

The defendant, Yvonne B. Ragland, was convicted on her guilty plea to Class D felony theft in the Knox County Criminal Court. The trial court denied her bid for judicial diversion and sentenced her to three years on probation. She appeals the denial of judicial diversion and the length of sentence imposed. Because the trial court erred in denying judicial diversion, we reverse and remand the case with instructions for the trial court to enter an order placing the defendant on judicial diversion with appropriate conditions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Mark E. Stephens, District Public Defender, and Christy Murray, Assistant Public Defender, for the appellant, Yvonne B. Ragland.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The record reflects that the defendant, who was forty-five years old at the time of her offense, worked through a temporary agency in a company's accounts payable department. The state's submission of facts at the guilty plea hearing included that the defendant wrote an unauthorized $2,150.47 check from the employer's account. The state anticipated evidence that the check was made payable to one of the employer's vendors from Ohio in care of the defendant's daughter at the Knoxville address where the defendant and her daughter lived, and the amount of the check was the total of nineteen outstanding invoices from the vendor. The state also expected testimony that the

defendant was later confronted when the employer discovered that the invoices had not been paid, and the defendant admitted what she had done.

The defendant testified at the diversion hearing that she was divorced and living in her daughter's home, and she was undergoing experimental treatments for cancer. Her daughter had left an "emergency check" in the home in the event a need arose for emergency funds. According to the defendant, she might use the emergency check to pay a bill if her daughter forgot. The defendant wrote this check for $600 when her son needed rent money. She said she failed to tell her daughter about writing the check, although she thought she had. The defendant's daughter told the defendant that the check caused the account to be overdrawn, and the daughter said that she would need to pay $2100 for the checks that had bounced as a result of the initial $600 check, or else the defendant would have to move out of her daughter's home. The defendant became anxious that she would die homeless at Christmas time. The defendant claimed she "crashed" after the company for which she was doing temporary work hired another individual for a position she had been promised, and she wrote the unauthorized check on the employer's account.

The defendant testified that since her crime, she has obtained full-time employment as a customer service representative. She also does community work as a storyteller for children and has started a support group for survivors of abuse. The defendant told the court that she was in the process of obtaining a loan against her car so that she could pay restitution in full, and she hoped to pay restitution within thirty days. The trial court continued the hearing to allow the defendant the opportunity to pay the restitution amount. Relative to the defendant's request for judicial diversion, the court said, "This is a very easy decision for me . . . . I'm going to move this case to 7/28/05. If restitution's paid in full on that date, I'll give her diversion. If not, I'm going to enter judgment."

By the time of the defendant's next court date, she had been unable to obtain the loan to satisfy the restitution balance. Contrary to the court's prior announcement that it would deny diversion and enter judgment if the defendant had not paid the restitution balance in full, the trial court considered the issue of judicial diversion on its merits. The court referred to a recent appellate opinion and said the proper inquiry relates to various factors:

> [T]he defendant's amenability to correction. The circumstances of the offense. The defendant's criminal record. The defendant's social history. The defendant's physical and mental health. The deterrence value to the defendant and others. And whether judicial diversion will serve the ends of justice. Additional factors which may be considered include the defendant's attitude, behavior, sense of rest [sic],[1] home environment, current drug usage, emotional stability, past employment, general reputation, family responsibilities, and the attitude of law enforcement.

---

[1] We presume an error exists in the transcript. The correct consideration is the defendant's behavior since arrest. See State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997).

The trial court then made specific factual findings relative to these factors. The court found that the defendant's health and circumstances at the time of the offense were entitled to less weight than the fact that the defendant had undertaken a conscious course of action to steal from her employer to cover for her earlier indiscretion with her daughter's checking account. The court denied judicial diversion.

The trial court found that the defendant had a prior history of Class B and C misdemeanors and gave enhancement weight to the circumstances of the offense. It imposed a mid-range, three-year sentence to be served on probation.

## I

The defendant first argues that the trial court erred in denying judicial diversion. She claims that the trial court inappropriately denied diversion because she had not paid restitution, without considering whether she had the means to pay. The state posits that the trial court weighed the appropriate factors and explained its reasons for denying diversion on the record, and its ruling should stand. We hold that the trial court erred in denying judicial diversion.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See T.C.A. § 40-35-313(a)(1)(B). As previously noted, judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. Id. When the probationary period expires, if the defendant has completed probation successfully, then the trial court will discharge the defendant and dismiss the prosecution with no adjudication of guilt. See id. at (a)(2). The defendant may then apply to have all records of the proceedings expunged from the official records. See id. at (b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See id. at (a)(1)(A).

Judicial diversion is not a sentencing alternative for a defendant convicted of an offense. See T.C.A. § 40-35-104(c). Therefore, there is no presumption that a defendant is a favorable candidate for judicial diversion. See State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). When a defendant challenges the manner of serving a sentence, this court conducts a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2003).[2] However, when the accused challenges the trial court's denial of a request for judicial diversion, a different standard of appellate review applies. Because the decision to grant judicial diversion lies within the sound discretion of the trial court, this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc.,

---

[2] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal.

990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). An abuse of discretion exists if the record contains no substantial evidence to support the denial. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983); Bonestel, 871 S.W.2d at 167.

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); Bonestel, 871 S.W.2d at 168. In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." Parker, 932 S.W.2d at 958-59. If the trial court "based its determination on only some of the factors, it must explain why these factors outweigh the others." Electroplating, 990 S.W.2d at 229.

In the present case, the trial court initially announced its intent to place the defendant on judicial diversion if she paid restitution in full and to deny her diversion if she did not. At that time, both the court and the defendant believed that the defendant would have the means to pay restitution within the time period allowed because the defendant anticipated receiving the proceeds of a loan. See T.C.A. § 40-35-313 (stating that judicial diversion may be granted and the defendant placed on probation "upon such reasonable conditions as [trial court] may require"); State v. Mathes, 114 S.W.3d 915, 917 (Tenn. 2003) (stating that restitution order should be based upon defendant's financial resources and future ability to pay). When the defendant was unable to obtain the loan she planned to use to make the restitution payment, the trial court acknowledged the change of circumstances. The trial court then considered the issue of diversion on its merits. Thus, the record does not reflect that the court denied diversion based upon the defendant's inability to pay restitution.

The question then becomes whether the trial court otherwise properly denied diversion. In ruling on the question, the court commented that the evidence before it was lacking with respect to some of the considerations, but it endeavored to make findings to the extent that evidence existed upon which to base them. Upon balancing the factors, the court found that those which favored diversion, including the defendant's poor health and difficult financial circumstances at the time, were "outweighed by the fact that this was a conscious effort to steal from her employer to cover a previous indiscretion on her part. That is, to cover a bad check that she had written on her daughter's account."

Upon review, we hold that substantial evidence does not support the trial court's denial of diversion. The defendant's crime, although serious, was limited to a brief time period in which she was facing unusual circumstances and made poor choices which were uncharacteristic given her overall background reflected in the record. This court has in some theft cases relied upon an employee's violation of an employer's trust as a basis for affirming a denial of judicial diversion.

-4-

See, e.g., State v. Robinson, 139 S.W.3d 661, 665 (Tenn. Crim. App. 2004) (relying in part on abuse of employer's trust in affirming judicial diversion denial to defendant/pharmacist who illegally distributed medication to his paramour); State v. Patricia Haltom, No. 01C01-9209-CC-00286, Davidson County, slip op. at 5 (Tenn. Crim. App. July 15, 1993) (affirming trial court's denial of judicial diversion to defendant who abused trust of the department store for which she worked by creating and spending fraudulent gift certificate). However, such cases have typically involved defendants who engaged in a continuous course of conduct over an extended period of time, rather than the isolated incident involved in the case at bar. See, e.g., State v. Adam Dewey Householder, No. E2004-01969-CCA-R3-CD, Blount County, slip op. at 1, 5 (Tenn. Crim. App. Sept. 29, 2005) (affirming denial of judicial diversion to defendant who took three cars from his employer and covered up fact that they were not being paid for by his family members and who took approximately $28,000 in cash in 2001 and 2002); State v. Danielle L. Walker, No. E2000-00578-CCA-R3-CD, Knox County, slip op. at 4 (Tenn. Crim. App. Mar. 29, 2001) (noting that repetitious nature of defendant's theft from her employer, indicating her sustained intent to violate the law, was factor favoring denial of judicial diversion); State v. Patricia Bohnenstiehl, No. 03C01-9801-CC-00035, Sevier County, slip op. at 4-5 (Tenn. Crim. App. Jan. 28, 1999) (affirming denial of diversion to defendant who embezzled from her employer during entire term of her fifteen-month employment); Patricia Haltom, slip op. at 5 (noting that defendant cashed fraudulent gift certficates "over an extended period of time").

At the time of the diversion hearing, the defendant had made positive efforts to improve her situation. She was working at a full-time job and had obtained her own housing. She expressed remorse, and the trial court made no findings calling into question her sincerity. The defendant has an associate's degree. She does have a history of a few misdemeanor offenses, which we do not consider significant enough to warrant a denial of diversion. Even the trial court did not rely on these offenses in its ruling denying diversion. We do not believe that the defendant's isolated misconduct, given the totality of the circumstances presented in this case, constitutes substantial evidence to support the trial court's denial of diversion, and we reverse. Cf. State v. Jared Singleton, No. M2002-02392-CCA-R3-CD, Warren County (Tenn. Crim. App. Mar. 5, 2004) (reversing trial court's denial of diversion to defendant whose convictions of forgery and criminal impersonation were based on single attempt to pass forged check, when defendant presented a generally favorable case for diversion and sole basis for denial was deterrence).

Upon remand, the trial court shall enter an order placing the defendant on judicial diversion "on such reasonable conditions as it may require" and for a time period not to exceed the maximum sentence length allowed for Class D felony theft. T.C.A. § 40-35-313(a)(1)(A). Those conditions may include payment of restitution. Id.; State v. Johnson, 980 S.W.2d 410, 412-13 (Tenn. Crim. App. 1998) (holding that "imposition of a fine or contribution of a monetary amount, not exceeding the maximum statutory fine, [is] a reasonable condition of judicial diversion"). Any condition of probation requiring restitution should take into account the defendant's financial resources and future ability to pay. State v. Mathes, 114 S.W.3d 915, 917 (Tenn. 2003).

**II**

The defendant also appeals the trial court's imposition of a three-year sentence. Although we have reversed the trial court's denial of judicial diversion, we will address this issue as presented.

The defendant claims she is entitled to be sentenced as an especially mitigated offender to 1.8 years. The state responds that the defendant has waived sentencing as an especially mitigated offender because she did not request this at the sentencing hearing, and that in any event, the sentence imposed is supported by the record. Upon de novo review, we would modify the sentence to two years on probation.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Unless enhancement factors are present, the presumptive sentence to be imposed is the minimum in the range for a Class D felony. T.C.A. § 40-35-210(c) (2003). Our sentencing act provides that, procedurally, the trial court is to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. at (d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Id. § 40-35-210 (2003), Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

In conducting our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

In the present case, the trial court announced that a three-year sentence on probation was appropriate given the defendant's "prior criminal history although misdemeanors, B and C misdemeanors, and the nature of the offense . . . ." The court did not refer to the principles of sentencing or state which enhancement or mitigating factors it found and its weighing of them during its cursory consideration of the appropriate sentence for the defendant. Thus, our review is de novo unaccompanied by the presumption of correctness. See Ashby, 823 S.W.2d at 169.

The defendant, a Range I, standard offender, faced a sentence of two to four years for her Class D felony conviction. See T.C.A. §§ 40-35-105 ("Standard Offender"), 40-35-110 (classification of offenses), 40-35-112 (sentence ranges). With respect to enhancement factors, the record reflects that two of the statutory factors apply. First, the defendant has a previous history of criminal convictions. See id. § 40-35-114(2) (2003). The defendant has two prior convictions related to driving without a license and a prior conviction for criminal impersonation. The defendant abused a position of private trust. See id. at (16). She was entrusted with bill-paying authority by her employer. It was by virtue of this trust that she was able to commit the theft. Both of these factors are entitled to moderate weight.

Mitigating factors exist, as well. We agree with the defendant that her conduct did not cause or threaten serious bodily injury. See id. § 40-35-113(1). This factor is entitled to moderate weight. We find some mitigation in the evidence that the defendant committed the crime in order to avoid eviction, although we give that factor only slight weight given that the defendant created her own peril by having written a check on her daughter's account. That check was to assist her adult son and was written without prior permission of her daughter. See id. at (3), (7). We agree that the defendant committed the offense under unusual circumstances and does not appear to harbor a sustained intent to violate the law. Id. at (11). We give this factor moderate weight. Likewise, we give some weight to the defendant's attempt to obtain a loan to make restitution and her professed willingness to pay restitution despite setbacks with the loan. See id. at (13). The defendant's professions of deep remorse also entitle her to moderate mitigation. See id. We have considered the other mitigating factors and find that none apply, including the mitigating factor for physical or mental condition. See id. at (8). Although the defendant commends that factor to us, there is no evidence that the defendant's illness significantly reduced her culpability for the theft. To the extent that the defendant claims that she did not want to be homeless while suffering from cancer, we have already accounted for threat of eviction in finding other mitigating factors. We also reject the defendant's argument for mitigation based upon assistance to the authorities in uncovering the crime. See id. at (9). The defendant apparently admitted guilt when confronted by her former employer. We are not persuaded that this factor should be applied. The defendant's admission came only after

she was confronted, and given the nature of her crime, her wrongdoing in all likelihood would have been overwhelmingly established even absent her confession.

Our next task is balancing the enhancement and mitigating factors. Upon doing so, we arrive at a two-year sentence for the defendant. We reject her bid for sentence reduction as an especially mitigated offender because our determination that enhancement factors exist precludes her classification as such. See id. § 40-35-109.

Finally, we reach the question of the appropriate sentence alternative. Although our review is de novo, we agree with the trial court that probation is appropriate for this defendant. She has shown remorse and has led a productive life since the time of her offense, both of which signal a strong prospect of rehabilitation. See, e.g., State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (potential for rehabilitation or lack thereof is appropriate consideration in determining whether to allow an alternative sentence). The state has not opposed the defendant being placed on probation. Accordingly, if we had not reversed the trial court's denial of judicial diversion, we would modify the defendant's sentence to two years of probation.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed. The case is remanded to the trial court for entry of an order placing the defendant on judicial diversion "on such reasonable conditions as it may require." See T.C.A. § 40-35-313(a)(1)(A).

_____
JOSEPH M. TIPTON, JUDGE