# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 15, 2007 Session

## STATE OF TENNESSEE v. THOMAS M. SULLIVAN

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-CR11762    Timothy L. Easter, Judge**

---

**No. M2006-02039-CCA-R3-CD - Filed March 19, 2008**

---

The defendant, Thomas M. Sullivan, was convicted of reckless homicide, a Class D felony. He requested judicial diversion or probation, but the court denied those motions and imposed a sentence of two years in confinement. On appeal, he contends that the trial court erred in denying his request for judicial diversion or alternative sentencing. After careful review, we conclude no error exists and affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

James L. Weatherly, Jr., Nashville, Tennessee, for the appellant, Thomas M. Sullivan.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek K. Smith, Deputy District Attorney, for the appellee, State of Tennessee.

## OPINION

The events surrounding the underlying crime took place at the defendant's home after a quarrel between in-laws. The victim and the defendant were engaged in a verbal dispute that turned into a physical altercation and ended when the defendant obtained a firearm and shot the victim in the head at close range. The victim did not die immediately; in fact, his death was a result of blood clots lodging in the arteries of his lungs. The forensic pathologist who performed the autopsy and the treating physician from the hospital testified that the victim would not have died of the blood clots had he not sustained the gunshot wound to his head.

The victim and his wife had been married almost twenty-seven years when he was killed. The victim's wife testified that she knew the defendant because his daughter was married to her son. The victim went to the defendant's home because he was concerned that the defendant's daughter

and wife were allowing their fifteen-year-old granddaughter to carry on a relationship with a man approximately five years older than the granddaughter. When the victim confronted the defendant with the information about the relationship, the defendant's wife began "screeching and hollering" and accused them of lying. The victim told the defendant's wife that the situation was her fault, at which time the defendant said he would "whip" the victim.

The victim stepped back to engage the defendant, and a fight ensued. The defendant got the best of the victim and, while the victim was stunned, the defendant went into the house to obtain a gun. The defendant's wife told the victim and his wife to leave because she felt the defendant was going to get his gun. The victim's wife said she was not frightened because she did not think the fight was enough to drive the defendant to get the gun. Nevertheless, she helped the victim to the car and returned to the yard to retrieve his glasses. She was about to return to the car when she observed the defendant six or seven steps from the car. The victim's wife said the defendant walked up to the car and discharged his gun. She then dove into the car. She heard her husband gurgling and saw that he was not breathing well, and she felt he was going to die. The defendant then opened the car door and said, "Oh, my God, George, I'm sorry, it was an accident." The defendant then returned to the house.

The victim's wife called 9-1-1 on her cell phone. She said that neither the defendant nor his wife came to check on the victim. The victim was treated in the trauma unit at Vanderbilt Hospital and survived another ten days. He was fifty-five years old when he died.

The defendant's wife testified to a different version of events on the night of the shooting. She acknowledged that she had taken a trip with her daughter, her granddaughter, and the older man her granddaughter was dating. She testified that the victim's family did not approve of the relationship and that her daughter did not want the victim's son to know that the man was going to accompany them on the trip. The incident occurred on the night they returned from the trip. She said she could smell alcohol on the victim's breath when he arrived. The defendant's wife testified that she and her husband asked the victim and his wife to leave or they would call the police, but the victim refused.

The defendant's wife said the victim came at her with his hand closed in a fist, hit her, and shoved her to the ground before hitting the defendant in the mouth with his fist. She testified that the men struggled on the ground before the defendant was able to break free. The victim allegedly hit her in the face again and caused her to fall in the yard. The defendant's wife claimed that she did not tell the victim and his wife that the defendant was going to get a gun. She said the defendant shook the gun at the victim and told him to leave before the victim opened the car door and hit the barrel of the gun causing it to discharge. She testified that the shooting was an accident and that they stayed with the victim until the paramedics arrived.

The defendant also testified about the events on the night of the shooting. He agreed with the testimony of his wife that the victim was the aggressor during the incident. He testified that he went to get the gun to protect himself from the victim. He said that, when he returned outside with

the gun, he saw the victim getting into his car. The defendant testified that he ran after the victim and told him to leave while shaking the gun at him. He said the gun fired accidentally when he hit the car window with it. He said he was shaking the gun in an up-and-down motion but did not intend to shoot it.

The defendant conceded that he pulled the trigger but claimed it was unintentional, despite the fact that he was pointing the gun at the victim. The defendant said he took the gun back inside before returning to check on the victim and said he stayed with him until the police arrived.

Analysis

The defendant contends that the trial court erred in denying the defendant judicial diversion and an alternative sentence. Judicial diversion is a "legislative largess" that a defendant, upon being found guilty or pleading guilty, may complete a diversion program and receive expungement of records and dismissal of the charges. State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999). When a defendant contends that the trial court erred by refusing to impose a sentence pursuant to Tennessee Code Annotated section 40-35-313, commonly referred to as "judicial diversion," this court must determine whether the trial court abused its discretion in failing to sentence pursuant to the statute. State v. Robinson, 139 S.W.3d 661, 665 (Tenn. Crim. App. 2004). Judicial diversion is similar to pretrial diversion; however, judicial diversion follows a determination of guilt, and the decision to grant judicial diversion rests with the trial court rather than the prosecutor. State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). The decision to grant judicial diversion lies within the sound discretion of the trial court. State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). When a defendant challenges the trial court's denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). As this court said in Anderson:

> We conclude that judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under T.C.A. § 40-15-105. Therefore, upon review, if "any substantial evidence to support the refusal" exists in the record, we will give the trial court the benefit of its discretion. Only an abuse of that discretion will allow us to overturn the trial court.

857 S.W.2d at 572 (citation omitted).

The criteria that must be considered in determining whether an eligible accused should be granted judicial diversion include: (a) the defendant's amenability to correction; (b) the circumstances of the offense; (c) the defendant's criminal record; (d) the defendant's social history; (e) the defendant's physical and mental health; and (f) the deterrence value to the defendant and others. Cutshaw, 967 S.W.2d at 343-44; Parker, 932 S.W.2d at 958. An additional consideration is whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as the defendant. Cutshaw, 967 S.W.2d at 344; Parker, 932 S.W.2d at 958.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See Tenn. Code Ann. § 40-35-313(a)(1)(B)(I). When a trial court grants a defendant judicial diversion, it defers further proceedings and places the accused on probation without entering a judgment of guilty. See Tenn. Code Ann. § 40-35-313(a)(1)(A). If the defendant successfully completes the requisite probationary period, the trial court is required to discharge the defendant and dismiss the proceedings, see Tenn. Code Ann. § 40-35-313(a)(2), and the defendant may have the official records of the proceedings expunged after dismissal of the proceedings. See Tenn. Code Ann. § 40-35-313(b).

Here, the trial court did not abuse its discretion by denying the defendant's request for judicial diversion. Our review of the record reflects that the trial court weighed all the required criteria in determining that the defendant was ineligible for judicial diversion. The factors from Cutshaw and Parker which the court considered to be in the defendant's favor were: (a) the defendant's amenability to correction; (c) the defendant's criminal record; (d) the defendant's social history; and (e) the defendant's physical and mental health. The court found that the criteria of (b) the circumstances of the offense and (f) the deterrence value to the defendant and others, weighed against the defendant. The trial court stated that, because a life had been taken in a homicide, the deterrence value to the defendant and others weighed heavily against the defendant. The State argues, and we agree, that it was appropriate for the trial court to give great consideration to the end of deterring others from retrieving and employing deadly weapons in non-life-threatening confrontations. In the instant case, a fistfight escalated when the defendant left the fight, got a loaded firearm, returned to confront the victim with the gun, and ultimately took the victim's life. It was not unreasonable that the trial court found the deterrence value weighed against the grant of judicial diversion.

Further, the trial court found that the ends of justice would not be served in granting the defendant diversion.

Additionally, the trial court noted that the defendant's attitude toward the crime weighed against the grant of diversion because the defendant refused to acknowledge the possibility that the jury was right in its verdict. This court has previously concluded that a defendant's refusal to accept responsibility for his actions is relevant to the question of whether judicial diversion is appropriate. See State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992).

Our review of the record reflects that the trial court gave full and proper consideration to the criteria that must be considered prior to the grant or denial of judicial diversion. The evidence in the record supports the trial court's conclusion; therefore, we may not revisit the issue. The judgment from the trial court denying judicial diversion is affirmed.

Next, the defendant argues that the trial court erred in denying him an alternative sentence of probation. This court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned

upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210(b), to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); Boston, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

Here, because the trial court imposed a two-year sentence, the defendant was eligible for probation. See Tenn. Code Ann. § 40-35-303(a). The trial court considered the evidence from both the trial and the sentencing hearing, the presentence report, the principles of sentencing, and the parties' arguments as to sentencing alternatives and stated that the defendant was a favorable candidate for alternative sentencing in the absence of evidence to the contrary. However, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and that it was the least severe measure necessary to achieve the purpose for which the sentence was imposed.

The trial court stressed the defendant's mistake of employing a firearm and stated that it was a mistake for which the defendant must be held accountable. As previously stated, the trial court was presented with a fistfight that escalated into a murder when the defendant decided to obtain a loaded firearm and introduce it into the altercation. The victim was in his vehicle, preparing to leave, when the defendant approached him with the weapon. The result was that the unarmed victim was shot and killed when the defendant aimed the gun at the victim and pulled the trigger.

The State argues, and we agree, that there is a strong interest in seeing that fistfights do not escalate into fatal confrontations when one person obtains and employs a deadly weapon. The trial court properly concluded that sentencing the defendant to probation would depreciate the seriousness of the offense. The defendant has failed to meet his burden of demonstrating that the sentence imposed was improper; therefore, the sentence is affirmed.

## Conclusion

Based on the foregoing and the record as a whole, we conclude no error exists and affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE