# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 6, 2008

## STATE OF TENNESSEE v. DEVIN JAMES

### Appeal from the Criminal Court for Shelby County
### No. 05-01624    Chris Craft, Judge

---

### No. W2007-01118-CCA-R3-CD  - Filed July 30, 2008

---

The Appellant, Devin James, appeals the sentencing decision of the Shelby County Criminal Court after a jury found him guilty of the reckless homicide of Rodney Steward. After a sentencing hearing, James received a thirty-month sentence in the "workhouse," with all but ninety days suspended, followed by five years of probation. On appeal, James argues: (1) that the trial court's denial of judicial diversion was error; (2) that the trial court erred in failing to grant him full probation; and (3) that the trial court erred in enhancing his sentence six months beyond the presumptive minimum and in imposing a probationary term of five years. After thorough review of the record and the briefs of the parties, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

DAVID G. HAYES, SR.J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Gerald D. Skahan, Memphis, Tennessee, for the Appellant, Devin James.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; Michelle Parks and Alanda Dwyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

A Shelby County grand jury indicted the Appellant for the offense of voluntary manslaughter in connection with the death of the victim, Rodney Steward, which occurred on October 20, 2004. The Appellant entered a plea of not guilty, and a jury trial was held on December 6, 7, and 8, 2006.

The proof at trial established that on the afternoon of October 20, 2004, the victim was visiting at the home of a friend, Sigmond Donelson, when he received a phone call from the Appellant. Donelson testified that the victim subsequently left his home, and that he appeared to be unconcerned after receiving the phone call and normal in demeanor. The victim's fiancé, Tamiko

Jackson, testified that she knew the Appellant, and that the victim considered the Appellant a good friend. She testified that she talked to the victim via cell phone as he drove to the Appellant's home, and that the victim told her that he had to pick up a package. Ms. Jackson testified that she heard the Appellant's voice fading away, and she also heard unfamiliar voices in the background, followed later by the sound of sirens.

Officer Thomas Johnson of the Memphis Police Department testified that he was the first responding officer at the Appellant's house around 3:00 p.m. When he arrived, Officer Johnson saw the victim, Rodney Steward, lying face down in the yard. Officer Johnson stated that the Appellant, who appeared calm, came out of the house to greet him.

Officer Ricky Davison of the Memphis Police Department testified regarding photographs taken at the crime scene and other evidence that was collected. Officer Davison testified that no weapon was found on or about the victim. He identified photographs of spent nine-millimeter casings that were found on the ground near the carport and driveway of the Appellant's house. Officer Davison also identified a photograph of a nine-millimeter handgun that he recovered on the floor board of the Appellant's Ford Taurus parked in the carport of the property. He further testified that he found 2.4 grams of crack cocaine in the pockets of the victim.

Officer William Woodard interviewed a neighbor of the Appellant, who stated that she heard seven shots fired at the Appellant's house on the date of the offense. Tennessee Bureau of Investigation Agent Don Carman testified that the Appellant's nine-millimeter pistol would hold six rounds in the clip and one in the chamber, for a total of seven rounds. Agent Carman further opined that the nine shell casings found at the scene came from the Appellant's gun, as did three nine-millimeter bullets retrieved from the victim's body. Shelby County medical examiner Dr. Karen Chancellor opined that Rodney Steward died as a result of multiple gunshot wounds. She testified that she observed a total of eight entrance wounds on the victim's body.

In his written statement to the police, the Appellant said that he and Rodney Steward arranged a meeting at his house on the date in question. The Appellant claimed that after the victim walked into the house through the front door, another man named Marcus Moffitt, nicknamed "Big D," walked into the house through the back door. The Appellant claimed that "Big D" told him to "lay down[,] bitch," and that the victim said they "were about to rob [his] punk ass." The Appellant claimed that "Big D" was armed with a nine-millimeter handgun, but that he was unsure if the victim was armed. The Appellant stated that he ran into another room and got his own nine-millimeter handgun. He claimed that when the victim and "Big D" saw his weapon, they ran out the back door. The Appellant claimed that he tried to follow, but that "they fired shots, so [he] waited." He stated that he "ran out and they fired again." The Appellant claimed that he feared for his life, and started firing his own gun. Afterwards, he stated that he ran back into his house to call 911 but was unable to use the phone inside. He went back out to his car to obtain his cell phone, and he claimed that a white van or truck pulled up and someone inside the vehicle started shooting at him again. The Appellant stated that he called 911, ran back into his house, and locked the door.

Sergeant Mullins testified that he investigated the area of the property in which the Appellant claimed that "Big D" had fired his gun, and that he was unsuccessful in locating any shell casings to corroborate these statements. Sergeant Mullins revisited the property to "double check" the scene the following day, and he testified that he found no evidence of bullet strikes inside or outside the house. He further indicated that neither of the vehicles parked at the property at the time of the shooting had been struck by bullets.

The Appellant testified at trial, and his recollection of shooting the victim largely tracked his written statement. He testified that "Big D" came in the back door and pulled a gun on him in the living room, and he went back to his office and procured his own gun and two clips from a closet. He related, "Well, they saw I had [the gun]. It was like a crazy set up. It's like they ran out and when I got out they started firing, so I was trying to get out just to secure my property and then shots were fired again and then I fired." The Appellant testified that he fired rapidly at both "Big D" and the victim, emptying one clip of the gun, and that he put his second clip in the gun, which he also emptied.

The Appellant testified that he was twenty-four years old at the time of trial, and that he had a four year old son of whom he had joint custody. He stated that he was a student at the University of Memphis, that he ran a graphic design/marketing company, and that he was a licensed real estate agent. The Appellant testified that he had been robbed on two previous occasions in his life. He stated that after the most recent robbery in February of 2004, during which he was shot in the shoulder, he bought a gun. The Appellant testified regarding his previous experience in the music business, and specifically that he had written "gangster rap." The Appellant explained that he was no longer involved in the music business.

The State called one rebuttal witness, Marcus Moffitt, who affirmed that he was known by the nickname, "Big D." Moffitt denied that he was with the victim on the day he was killed, and he testified that he did not rob the Appellant. Moffitt testified that he did not know the Appellant or where he lived. He admitted a conviction for theft of property in 1999, arising from his purchase of a stolen gun. Moffitt's wife testified that she was at the home of her sister-in-law with Moffitt and her children on the afternoon of October 20, 2004.

Based upon the foregoing evidence, the jury found the Appellant guilty of the lesser offense of reckless homicide. A presentence report was prepared, and a sentencing hearing was held. In sentencing the Appellant as a Standard, Range One offender, the trial court imposed a split confinement sentence of two years and six months, with ninety days to be served in confinement followed by five years of probation. The Appellant filed a motion for new trial, which was denied, and he timely filed a notice of appeal.

## Analysis

The issues raised by the Appellant on appeal relate to the length and manner of the sentence imposed by the trial court. When an accused challenges the length, range, or manner of service of

a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. The burden is on the Appellant to show that the sentencing was improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

When conducting a *de novo* review of the sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)).

## I. Judicial Diversion

The Appellant argues that the trial court abused its discretion in denying him judicial diversion. The Appellant contends that the trial court unfairly focused upon certain aspects of his lifestyle, such as his former "financially successful involvement in the rap music business" and his dropping out of high school, and that the trial court's determination that the Appellant provided untruthful testimony at trial is not supported by the record.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. *See* T.C.A. § 40-35-313(a)(1)(B)(i) (2003). With these requirements in mind, it is undisputed that the Appellant is eligible for judicial diversion. When a trial court grants a defendant judicial diversion, it defers further proceedings and places the accused on probation without entering a judgment of guilty. *Id.* § 40-35-313(a)(1)(A). If the defendant successfully completes the requisite probationary period, the trial court is required to discharge the defendant and dismiss the proceedings, *id.* § 40-35-313(a)(2), and the defendant may have the official records of the proceedings expunged after dismissal of the proceedings. *Id.* § 40-35-313(b).

The decision of whether to grant a request of judicial diversion lies within the sound discretion of the trial court, and this court will not disturb that decision on appeal absent an abuse of discretion. *State v. Robinson*, 139 S.W.3d 661, 665 (Tenn. Crim. App. 2004). When a defendant challenges the trial court's denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

In deciding whether to grant judicial diversion, the trial court must consider the following factors: (1) the accused's amenability to correction; (2) the circumstances of the offense; (3) the

accused's criminal record; (4) the accused's social history; (5) the status of the accused's physical and mental health; and (6) the deterrence value to the accused as well as others. *Parker*, 932 S.W.2d at 958. "The trial court should also consider whether judicial diversion will serve the ends of justice – the interests of the public as well as the accused. *Id.; see also State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). The record must indicate that the court has weighed all of the factors in reaching its determination. *Electroplating, Inc.*, 990 S.W.2d at 229. If the trial court denied the request for judicial diversion, it should state in the record "the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59. If the trial court "based its determinations on only some of the factors, it must explain why these factors outweigh the others." *Electroplating, Inc.*, 990 S.W.2d at 229.

At the sentencing hearing held in this case, the trial court clearly addressed the requisite considerations in arriving at the decision to deny the Appellant judicial diversion. The trial court noted that the Appellant had no prior convictions, and that he currently has "a good income." Although the trial court articulated concerns regarding the Appellant's social history, specifically his dropping out of high school, it noted that he obtained his GED and appeared to be supporting his children. The trial court found the Appellant to be in "good physical and mental health as far as being rehabilitated." The court stated, "I do have a problem with the rap music that was played during this trial that [the Appellant] was producing, talking about shooting and killing[,]" but the court expressly noted, "I can't punish [the Appellant] for being in the rap business because it's a legitimate business . . . ."[1]

The trial court based its denial of diversion, in part, on the circumstances of the offense, in that the Appellant admittedly shot the victim repeatedly as he ran away from the Appellant's house. The court found that "the physical evidence in the trial does not match the [Appellant]'s testimony" with regard to the events that occurred at his home. The trial court noted that, despite the Appellant's testimony that Moffitt, who was allegedly armed, fired the initial gunshots and provoked the Appellant to shoot the victim in self-defense, there was no evidence of another gun, aside from the Appellant's, having been fired inside or outside the house. This court has upheld the denial of judicial diversion on the basis of untruthfulness. *See State v. Anderson*, 857 S.W.2d 571 (Tenn. Crim. App. 1992). Moreover, in *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994), we held that consideration of a defendant's candor while testifying was probative of her prospects for rehabilitation pursuant to T.C.A. § 40-35-103(5). The trial court also found that diversion was not appropriate considering the deterrence value to the accused and others, and that diversion would not serve the interests of the public. The court concluded, "So having weighed all those factors, I just cannot see putting [the Appellant] on diversion for an unnecessary killing when he gets on the stand and lies about it, and still is persisting in lying." After review, we conclude that the record contains substantial evidence to support the trial court's denial of judicial diversion.

## II. Full Probation

---

[1] The trial court's reference was made with regard to the recordings written by the Appellant, entitled "Niggaz They Hate" and "Shoot First."

The Appellant argues that the trial court erred in denying full probation. "[A] defendant is required to establish his suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see also* T.C.A. § 40-35-303(b) (2003). To meet the burden of establishing suitability for full probation, the Appellant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled in part on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

In determining one's suitability for full probation, the court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. T.C.A. §§ 40-35-210(b)(4), -103(5), -103(1)(B) (2003); *see also Bingham*, 910 S.W.2d at 456. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. *Id.* (citing *Fletcher*, 805 S.W.2d at 788-89).

> In determining whether to grant or deny full probation, additional considerations include the defendant's criminal record; social history and present condition of the defendant, including his or her mental and physical conditions where appropriate; defendant's amenability to correction and general attitude, including behavior since arrest, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and the best interests of both the defendant and the public.

*State v. Blackhurst*, 70 S.W.3d 88, 97 (Tenn. Crim. App. 2001) (citing *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993); *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995)).

The Appellant did not submit an argument in support of full probation at sentencing, and the trial court made no specific findings on this issue. Nonetheless, we conclude that the Appellant did not satisfy his burden to establish that full probation would "subserve the ends of justice and the best interest of both the public and the defendant." Accordingly, we conclude that this issue is without merit.

## III. Sentence Enhancement

The Appellant challenges the trial court's imposition of an additional period of five years probation, following his release from "workhouse" confinement, for his Class D felony conviction. The Appellant cites statistical data on the average split confinement sentence length for felony convictions in Tennessee and argues that "the single enhancement factor [applicable in his case] and extensive mitigation should have produced a probation sentence in line with the median sentence," which he argues is substantially less than the five year probationary term imposed. In response, the

State characterizes the Appellant's reliance upon such statistical data as a request that this court perform a comparative proportionality review of his sentence, as applicable in capital cases.

We agree with the State that the Appellant's argument is misplaced. Based upon the application of one enhancement factor, and appropriately recognizing the applicable mitigating factors, the trial court enhanced the Appellant's sentence only six months beyond the minimum sentence for a Standard, Range One offender convicted of a Class D felony, which is two years. We conclude that the nature and characteristics of the criminal conduct involved warrant the enhancement of the Appellant's sentence six months beyond the presumptive minimum. *See* T.C.A. § 40-35-210(b)(4) (2003). Insofar as the Appellant alleges error in the trial court's application of these factors, we conclude that such a challenge to this aspect of the sentence is unavailing.

Moreover, the applicable sentencing law clearly supports the trial court's decision to sentence the Appellant to two years and six months' incarceration, with all but ninety days suspended, as well as its imposition of a probationary term of five years. The relevant subsection provides:

> If the court determines that a period of probation is appropriate, the court shall sentence the defendant to a specific sentence but shall suspend the execution of all or part thereof and place the defendant on supervised or unsupervised probation either immediately or after a period of confinement for a period of time no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense.

T.C.A. § 40-35-303(c)(1) (2003). The Sentencing Commission comments provide that "even though the length of the actual sentence is restricted to that required by the particular range, the judge may fix the length of probation up to the statutory maximum for the class of the offense[,]" thus, authorizing a trial court to impose a lengthier probation period for a defendant than the actual imposed sentence. *Id.*, Sentencing Comm'n Cmts. Moreover, trial courts are given much latitude in fixing the length of probation. *State v. Joseph Ray Evans*, No. M2006-02748-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 9, 2008). The maximum penalty for the Appellant's Class D felony conviction is twelve years. T.C.A. § 40-35-112(c)(4). Thus, because the trial court imposed a five-year term of probation in this case, the sentence is clearly authorized by statute. Accordingly, this issue is without merit.

## CONCLUSION

Based upon the foregoing, the judgment of the Shelby County Criminal Court is affirmed.

_____
DAVID G. HAYES, SENIOR JUDGE