# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs December 16, 2003

## STATE OF TENNESSEE v. RICHARD ROBINSON

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S47,033     Phyllis H. Miller, Judge**

---

**No. E2003-01042-CCA-R3-CD**
**February 3, 2004**

---

The defendant, pharmacist Richard Robinson, pled guilty to five counts of the unlawful disbursement of a controlled substance. The Sullivan County Criminal Court imposed an effective sentence of four years probation. On appeal, the defendant contends (1) the trial court erred in denying judicial diversion, and (2) the trial court improperly restricted his employment as a pharmacist as a condition of probation. Upon review of the record and the applicable law, we affirm the trial court's denial of judicial diversion but vacate the trial court's imposition of the probationary condition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court**
**Affirmed in Part; Reversed in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Donald E. Spurrell, Johnson City, Tennessee, for the appellant, Richard Robinson.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William B. Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pled guilty to five counts of unlawfully dispensing a controlled substance during the course of his employment as a pharmacist, Class D felonies, for transactions which occurred on three separate occasions between July and August 2001. *See* Tenn. Code Ann. §§ 53-11-308(c), -401(a), (b)(1). After the defendant entered his pleas, the trial court held a hearing to determine the length and manner of sentencing.

The defendant's convictions resulted from transactions involving Amy Lane who was working as a police informant on those occasions. In 1997, Lane was a customer at the pharmacy in which the defendant was then employed. At the time, both the defendant and Lane were married

to other individuals, and Lane had a young child. In late 1999 or early 2000, the defendant and Lane became romantically involved.

The defendant testified that in early 1998, Lane informed him that she had suffered a severe sunburn and requested pain medication. The defendant stated that upon checking her records, he discovered Lane had a prescription for Lortab with one refill remaining and legally filled the prescription for her. According to the defendant, on subsequent occasions when Lane entered the pharmacy and requested medication, he would unlawfully reprint a label which had been previously used and dispense the medication to her. The defendant testified he provided Lane with both Lortab and Xanax. The defendant stated that when Lane received the medication, she paid the co-payment on her insurance policy, but he did not send a bill to her insurance company.

The defendant testified that upon noticing a decrease in Lane's self-esteem and a lack of care for her personal appearance, he began to worry about her health. The defendant stated his attempts to wean Lane from the medication failed. The defendant further stated he was unaware of other medications that Lane may have been taking, but he did not observe any evidence that the medication which he supplied Lane caused her serious bodily injury.

The defendant testified that on May 1, 2002, he was interviewed by TBI Agent Barry Carrier who questioned him regarding instances of Medicaid or Medicare fraud at Marcum's Pharmacy, the pharmacy in which the defendant was then employed. The defendant told Agent Carrier that he was unaware of any such activities, and Agent Carrier instructed him to report any observations which he believed would aid law enforcement in their investigation.

The defendant testified that following the interview with Agent Carrier, he was then interviewed by Agents Shaun Chambers and Joey Graham regarding his involvement with Lane. The defendant gave a statement in which he admitted providing Lane with medication without a valid prescription. The defendant stated that after the agents informed him of the possibility of pretrial diversion, he agreed to cooperate. The defendant further stated the agents instructed him to stay away from Lane and that he obeyed their instructions.

The defendant testified that in September 2002, he was again interviewed by Agent Carrier during which time he provided the agent with information regarding fraudulent activities. The defendant stated he was also prepared to testify for the state in various forgery trials; however, each case was resolved prior to trial.

The defendant stated that while employed at Marcum's Pharmacy, he received a portion of his salary in cash in order to avoid income taxes. The defendant stated he has since revised his 2001 income tax return and is prepared to pay the penalty and interest which totaled approximately $2,500.

The defendant testified he remarried in October 2002 and has a three-year-old stepson. At the time of the hearing, he was employed with a different pharmacy but was on leave due to the present case. The defendant stated he "[i]ndirectly" contacted the Board of Pharmacy regarding this

case through his pharmacy's district manager. He further stated that if he lost his pharmaceutical license, he would have no way to support himself.

## I. TRIAL COURT'S FINDINGS

The trial court noted that the offenses for which the defendant was indicted were not the only instances in which the defendant illegally dispensed medication to Lane; rather, a relationship had been established. In denying judicial diversion, the trial court examined factors which weighed both for and against the defendant. The trial court noted the defendant had an education, a profession, acquaintances who could not believe he committed the offenses, a good history of employment and service in the military, good grades while in school, and a "respectable life at one time." However, the trial court applied the following enhancement factors: enhancement factor (2), the defendant has a previous history of criminal conduct; enhancement factor (3), the defendant was a leader in the commission of the offense; and enhancement factor (16), the defendant abused a position of private trust. *See* Tenn. Code Ann. § 40-35-114(2), (3), (16) (2003). The trial court also applied mitigating factor (9), the defendant assisted law enforcement officials in uncovering offenses committed by others, and mitigating factor (13), "[a]ny other factor consistent with the purposes of this chapter" noting the defendant's lack of a criminal record, sincere remorse, excellent work history, voluntary confession of guilt, and honorable discharge from the military. *See id.* § 40-35-113(9), (13).

The trial court denied the defendant's request for judicial diversion and ordered him to serve his four-year sentence on probation. The court noted the defendant illegally supplied Lane with medication for an extended time; the defendant was involved in other criminal activity by filing false tax returns; and the defendant had a poor social history as evidenced by his involvement with Lane.

The trial court sentenced the defendant to the minimum sentence of two years for each count to be served concurrently as a Range I standard offender. The court then ordered the defendant to serve four years probation. As a condition of probation, the trial court prohibited the defendant from working as a pharmacist during the four-year period of probation. The trial court noted the condition regarding the defendant's employment applied even if the Board of Pharmacy chose not to suspend the defendant's license.

## II. JUDICIAL DIVERSION

The defendant contends the trial court erroneously denied his request for judicial diversion. We disagree.

### A. Waiver

The record before this court does not contain a transcript of the guilty plea. In order to conduct an effective appellate review of sentencing, a transcript of the guilty plea hearing is necessary. State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). The transcript of the guilty plea is usually necessary in order for this court to ascertain the facts and circumstances surrounding the offense. Indeed, the guilty plea hearing is the equivalent of a trial. *Id.* at 843. In

the absence of a transcript of a guilty plea, this court must generally conclude that the sentence imposed by the trial court was correct. *Id*. at 844. In the case at bar, the trial court referenced the facts underlying the offenses as a basis for denying judicial diversion. Regardless of this procedural shortcoming, we conclude the trial court properly denied judicial diversion.

## B. Analysis

Judicial diversion is a "legislative largess" where a defendant, upon being found guilty or pleading guilty, may complete a diversion program and receive expungement of records and dismissal of the charges. State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999). When a defendant contends that the trial court committed error in refusing to impose a sentence pursuant to Tennessee Code Annotated section 40-35-313, commonly referred to as "judicial diversion," this court must determine whether the trial court abused its discretion in failing to sentence pursuant to the statute. State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993). When a defendant challenges the trial court's denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. Cutshaw, 967 S.W.2d at 344; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

The criteria that must be considered in determining whether an eligible accused should be granted judicial diversion include: (a) the defendant's amenability to correction; (b) the circumstances of the offense; (c) the defendant's criminal record; (d) the defendant's social history; (e) the defendant's physical and mental health; and (f) the deterrence value to the defendant and others. Cutshaw, 967 S.W.2d at 343-44; Parker, 932 S.W.2d at 958. An additional consideration is whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as the defendant. Cutshaw, 967 S.W.2d at 344; Parker, 932 S.W.2d at 958.

We conclude the trial court properly denied the defendant's request for judicial diversion based upon the circumstances of the offenses and his involvement in other instances of criminal conduct. While acting in his capacity as a pharmacist and under the "trappings of legitimacy," the defendant illegally distributed medication to a woman with whom he was romantically involved. The defendant continued to commit these offenses for an extended period of time. In addition, the defendant violated a position of private trust placed in him by his employer. *See* Tenn. Code Ann. § 40-35-114(16) (2003).

The defendant maintains the trial court erred in considering other instances of criminal conduct because no evidence was presented that he filed false tax returns or committed any other criminal offenses in accepting a portion of his salary in cash. However, during the sentencing hearing, the defendant admitted he received a portion of his salary in cash; he had since revised his 2001 income tax return; and he was required to pay a penalty and interest totaling approximately $2,500. Furthermore, the trial court admitted into evidence Agent Carrier's typewritten notes from his second interview with the defendant during which the defendant admitted receiving undocumented cash disbursements in order to avoid paying income taxes. The trial court properly

considered this evidence as prior criminal conduct. Accordingly, we conclude the trial court did not abuse its discretion in denying judicial diversion.

### III. CONDITIONS OF PROBATION

The defendant contends the trial court erred in prohibiting him from practicing as a pharmacist as a condition of his probation. We agree.

Pursuant to Tennessee Code Annotated section 40-35-303(d), a trial court has great latitude in determining the conditions of probation. State v. Burdin, 924 S.W.2d 82, 85 (Tenn. 1996). The court may require a defendant to "[s]atisfy any other conditions reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty, or incompatible with the offender's freedom of conscience, or otherwise prohibited by this chapter[.]" Tenn. Code Ann. § 40-35-303(d)(9). The primary purpose of a sentence of probation is rehabilitation of the defendant. Burdin, 924 S.W.2d at 86. Furthermore, trial courts are not permitted to impose punishments which are "beyond the bounds of traditional notions of rehabilitation." *Id.* at 87; State v. Mathes, 114 S.W.3d 915, 918 (Tenn. 2003).

There is little guidance in Tennessee's appellate cases relating to probation conditions that restrict a defendant's employment and method of livelihood. However, this court has concluded that prohibiting a defendant from engaging in "any type [of] construction business or solicitation for business" was "far too broad" considering this was the defendant's primary means of livelihood. State v. Robert Lewis Herrin, No. M1999-00856-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 118, at *15 (Tenn. Crim. App. Feb. 9, 2001). In Herrin, the defendant was convicted of theft relating to a construction scam and had prior convictions for the same type of criminal activity. This court narrowed the employment restriction to solicitation and collecting funds in the construction trade. *Id.*

Other jurisdictions have addressed this issue. *See, e.g.,* United States v. Pastore, 537 F.2d 675, 683 (2d Cir. 1976) (requiring attorney convicted of filing false tax returns to resign from bar held improper); Thomas v. State, 710 P.2d 1017, 1018 (Alas. App. 1985) (prohibiting commercial fisherman convicted of stealing crab pots from engaging in commercial fishing held improper); Hussey v. State, 504 So.2d 796, 797 (Fla. App. 1987) (prohibiting defendant convicted of various charges from engaging in work in the carnival business held improper); State v. Graham, 633 N.E.2d 622, 625 (Ohio App. 1993) (prohibiting certified public accountant convicted of securities violations involving numerous victims from providing accounting services to the general public, but allowing employment for a private company, held proper).

In United States v. Sterber, 846 F.2d 842 (2d Cir. 1988), a pharmacist convicted of falsely reporting drug information was required by the trial court to surrender his pharmacist's license. The federal appellate court vacated the order to surrender, noting the state had a comprehensive regulatory system to handle professional misconduct. *Id.* at 844. Similarly, a pharmacist convicted of illegally selling drugs to drug dealers was prohibited by the trial court from working in a pharmacy during his probationary period. Towers v. State, 607 A.2d 105, 108 (Md. App. 1992).

The appellate court struck the restriction, noting the State Board of Pharmacy should make such a determination. *Id.* at 110. *See also* McPike v. State, 473 So.2d 291, 292 (Fla. App. 1985) (holding a prohibition on writing prescriptions imposed as a condition of probation on a doctor convicted of theft was improper, noting the Board of Medical Examiners should make such a determination).

We conclude that a probation condition that deprives a defendant of the opportunity to pursue lawful employment should be closely scrutinized. This is especially true in the case of a professional whose conduct is regulated by a regulatory agency. We find instructive the three-pronged test set forth in Graham relating to a probation condition which restricts employment; namely, (1) it must reasonably relate to rehabilitation; (2) it must have a relationship to the crime committed; and (3) it must relate to conduct which is criminal or reasonably relate to future criminality. 633 N.E.2d at 624 (citing State v. Jones, 550 N.E.2d 469, 470 (Ohio 1990)). These criteria appear to be consistent with the statutory guidelines in Tennessee. *See* Tenn. Code Ann. § 40-35-303(d) (2003).

Initially, we note that the employment restriction indeed relates to the offenses committed because the offenses were committed by the defendant in his capacity as a pharmacist. However, we question whether the restriction is rehabilitative and whether it properly relates to future criminality. The practice of pharmacy is a lawful occupation, and the ban imposed by the trial court deprives the fifty-nine-year-old defendant of engaging in his means of livelihood. Unlike many other cases, the criminal conduct at issue related only to one person, even though it went on for an extended time. The record reveals that other than the instant infractions, the defendant has committed no other professional improprieties over his many years of practice. The practice of pharmacy is strictly regulated in this state by the Tennessee Board of Pharmacy, *see* Tenn. Code Ann. §§ 63-10-504, -505; there is no showing that the defendant presents a danger to the public should he practice pharmacy under supervision of the Tennessee Board of Pharmacy; and the trial court did not indicate the ban was imposed out of concern for future criminality. Under the facts and circumstances of this case, we believe the powers of the Tennessee Board of Pharmacy are adequate to regulate the defendant's conduct within the profession.[1]

By vacating the restriction on the practice of pharmacy, this court is not holding that a prohibition of professional employment is never justified. Each case must be carefully examined based upon the circumstances. There may well be times when a court could properly prohibit one from practicing a profession during the period of probation, especially if based upon the court's concern for future criminality. However, that does not appear to be the case here.

We conclude that in the event the Board of Pharmacy does not suspend the defendant's license, the trial court's ban on the practice of pharmacy during the four-year probationary period

---

[1]The record is not entirely clear as to the defendant's status with the Board of Pharmacy. Defense counsel indicated to the trial court that the defendant "will be able to keep his license and keep his work" if granted diversion. Because we have affirmed the denial of diversion, the trial court's restriction on practicing pharmacy may be moot. Regardless, under the facts and circumstances of this case, we believe the powers of the board are adequate to regulate the defendant's professional conduct.

(1) is punitive and not rehabilitative, (2) is not based upon concerns of future criminality, (3) is unnecessary and overbroad in light of the regulatory authority of the Tennessee Board of Pharmacy, and (4) is unduly restrictive in preventing lawful employment. Accordingly, we vacate this condition of probation.

## CONCLUSION

We affirm the trial court's denial of judicial diversion. However, we reverse the trial court's order prohibiting the defendant from practicing as a pharmacist as a condition of his probation.

_____
JOE G. RILEY, JUDGE