# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 21, 2007 Session

## STATE OF TENNESSEE v. BETTY R. CHUMBLEY

### Appeal from the Circuit Court for Marshall County
### No. 16852     Robert Crigler, Judge

---

### No. M2006-01117-CCA-R3-CD - Filed on June 20, 2007

---

The defendant, Betty R. Chumbley, pled guilty to two counts of theft between $10,000 and $60,000, a Class C felony; three counts of official misconduct, a Class E felony; and one count of destruction of and tampering with governmental records, a Class A misdemeanor. The theft counts were merged and the official misconduct counts were merged. She received an effective five-year sentence on probation. On appeal, the defendant contends that the trial court erred in denying her judicial diversion. We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. McLIN, JJ., joined.

Robert L. Marlow, Shelbyville, Tennessee, for the appellant, Betty R. Chumbley.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Charles F. Crawford, District Attorney General; Ann L. Filer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The presentence report in this case describes the events leading up to the defendant's indictments:

> The defendant, Betty Chumbley, held the position of Jail Administrator at the Marshall County Sheriff's Department when these offenses occurred. County auditors from the Tennessee Comptroller's Office conducted a routine audit at the jail in March of 2005. Missing funds and/or questionable expenditures over fourteen thousand dollars were discovered on March 14, 2005. The Jail Administrator was in charge of an account used by the Marshall

County Jail which allowed inmates to purchase commissary items. The discrepancies were located in the commissary account.

Betty Chumbley resigned from the Sheriff's Department on March 15, 2005, after working there for twelve years. She noted the reason for resignment [sic] being personal.

The Comptroller's Office notified the District Attorney General Mike McCown, who in turn requested the Tennessee Bureau of Investigation's assistance. Agent Gene Stegall handled the investigation. Many employees of the Sheriff's Department were questioned, including all who had taken money from inmates and issued receipts. On March 16, 2005, the defendant was interviewed and gave a verbal statement to Agent Stegall. She admitted to taking money by withholding or keeping inmates' money and writing false checks to inmates. The defendant further stated that she was the only employee involved and although she didn't keep up with the figures, she didn't think she took fourteen thousand dollars.

Betty Chumbley's co-workers did not suspect her of taking monies from the commissary account. In 2001, an audit of the jail revealed discrepancies in the commissary account. The defendant advised Sheriff Les Helton the difference was due to poor accounting. She personally reimbursed the jail seven hundred and thirty-four dollars and was allowed to hold the same position with no suspicion of criminal intent.

The defendant was indicted on two counts of theft between $10,000 and $60,000, T.C.A. § 39-14-103; three counts of official misconduct, T.C.A. § 39-16-402; and one count of destruction of and tampering with governmental records, T.C.A. § 39-16-504. In her statement included in the presentence report, the defendant said that on several occasions starting in 2004, she appropriated for her personal use money intended to be deposited in prisoners' accounts. She guessed that the amount stolen totaled $3000 or $4000 but admitted that because she "did not keep up with the amount," it was possible she took $14,000 or more. She said of her crimes:

I only took the money to support myself & my 9 year old daughter. I am a single mother, and have had financial problems during the last couple of years. The money was mainly used to pay bills and debts. I am sorry for taking the money. I don't have a checking account, and I only have about $25 in a savings account. However, I am willing to pay back the money. I know what I have done is "theft", and I knew that eventually I would get caught.

At the sentencing hearing, the defendant's brother-in-law, Mark Blackwood, testified that his wife was the defendant's sister. He said he and his wife provided the bulk of the money for the defendant to pay $22,960.88 in restitution before the sentencing hearing. He said that before she was caught stealing money, the defendant did not tell him and his wife of her dire financial conditions. He said that if they had known, they would have helped her. He said that finding out about the defendant's crimes initially caused strain on their family but that they ultimately became closer as a result. He characterized the defendant's feelings since being caught as regretful and remorseful and said that she had become more attentive with her daughter. He said the defendant had been more open and honest and that the family had been working together to "get a handle on her bills." He said that he had several discussions with the defendant about her actions and believed the defendant had "learned the lesson, there is not going to be a second time."

Mr. Blackwood, himself a federal employee, agreed that government employees are held to high standards of conduct. He said that he and his wife had provided financial support to the defendant and her daughter over the years. He said, however, that during the time that the defendant was taking money from the inmates, he and his wife helped with "minor expenses," mostly related to the defendant's daughter's extra-curricular activities. He also said that the defendant had not made a formal arrangement for her daughter's custody in the event that she was imprisoned, although he said she made verbal arrangements with him and his wife.

The court heard arguments from the defendant and the state on mitigating and enhancement factors, and the defendant asked for judicial diversion under Tennessee Code Annotated section 40-35-313. The trial court sentenced the defendant as a Range I, standard offender, to five years for theft, one year and nine months for official misconduct, and eleven months and twenty-nine days for destruction of and tampering with governmental records, to be served concurrently. The court also denied judicial diversion, stating that granting it "would depreciate the seriousness of the offense." The court elaborated:

> I think people in government service do it for more than just the money. I think we get maligned unfairly to be honest with you. Not that we are perfect. We are all far from that. We take our fair share of abuse.
>
> When somebody commits an offense like this, it is just like throwing gas on a fire. I do consider this extremely serious, but she has no prior record.
>
> I am not going to give her the benefit of the 40-35-313. I think that would depreciate the seriousness of the offense, but I will give her alternative sentencing.

The defendant challenges the trial court's denial of judicial diversion. She argues that the trial court based its decision only on one factor–concern for depreciating the seriousness of the

-3-

offense–and ignored several factors favorable to diversion. She argues that no evidence in the record shows that the ends of justice or the best interests of the public and the defendant are served by the denial of diversion. The state contends that the denial of judicial diversion was appropriate and not an abuse of discretion.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See T.C.A. § 40-35-313(a)(1)(B). Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. Id. When the probationary period expires, if the defendant has completed probation successfully, then the trial court will discharge the defendant and dismiss the prosecution with no adjudication of guilt. See id. at (a)(2). The defendant may then apply to have all records of the proceedings expunged from the official records. See id. at (b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See id. at (a)(1)(A).

Judicial diversion is not a sentencing alternative for a defendant convicted of an offense. See T.C.A. § 40-35-104(c). Therefore, there is no presumption that a defendant is a favorable candidate for judicial diversion. See State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). Because the decision to grant judicial diversion lies within the sound discretion of the trial court, this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). An abuse of discretion exists if the record contains no substantial evidence to support the denial. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983); Bonestel, 871 S.W.2d at 167.

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); Bonestel, 871 S.W.2d at 168. In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state on the record "the specific reasons for its determinations." Parker, 932 S.W.2d at 958-59. If the trial court "based its determination on only some of the factors, it must explain why these factors outweigh the others." Electroplating, 990 S.W.2d at 229.

While taking into consideration the defendant's lack of a prior criminal record, the trial court determined that the need not to depreciate the seriousness of the offense warranted a denial of judicial diversion. We note that the record does not reflect that the trial court considered all the factors relevant to granting or denying judicial diversion and did not adequately explain on the record

its denial. Therefore, we will conduct a de novo review to determine "whether the trial court reached the correct result notwithstanding its failure to explain its reasoning." Electroplating, 990 S.W.2d at 229.

Several factors weigh in favor of granting judicial diversion. As the trial court noted, the defendant had no prior criminal history. Furthermore, the defendant's social history was positive. No evidence indicated that the defendant had a history of drug or alcohol abuse. She had supportive family members who were committed to helping her with her financial problems and to ensuring that she did not repeat her criminal behavior. We also take into consideration the fact that the defendant, with the help of her family, paid her restitution in full. Nothing in the record indicates that the defendant would not be amenable to correction. We note that the record is silent as to the defendant's mental and physical health.

Despite the positive factors, there are also factors that weigh against granting judicial diversion. The trial court focused on the circumstances of the crime and found that they weighed heavily against judicial diversion. This case involves a public employee of the sheriff's department stealing money from jail inmates. As the trial court indicated, this type of criminal behavior undermines the public's confidence in government service, particularly in the criminal justice system. The crime involved a violation of a public trust, a factor which the trial court weighed heavily when determining the length of the defendant's sentence. This court has held that thefts involving a defendant's violation of his employer's trust justified the trial court's denial of judicial diversion. See State v. Robinson, 139 S.W.3d 661, 665 (Tenn. Crim. App. 2004). We have also held that it is appropriate when denying diversion to place great weight on a violation of public trust by a public official, particularly an official involved in the criminal justice system. State v. Houston, 900 S.W.2d 712, 715 (Tenn. Crim. App. 1995) (involving denial of pretrial diversion); see also State v. Anderson, 857 S.W.2d 571, 572 (noting that "judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under T.C.A. § 40-15-105"). Also significant is the fact that the defendant stole money from inmates and the sheriff's department on several occasions over the course of about a year and attempted to cover her crimes by writing fraudulent checks. Although the defendant admitted her guilt and showed remorse, she did so only after an investigation began and it was clear that she could no longer hide her actions. Furthermore, denying judicial diversion in this case may have a deterrent effect on other public officers and sends the message that such criminal behavior will not be tolerated.

We also note the similarities between the present case and a prior case decided by this court, State v. Charles Chesteen, No. E1999-00910-CCA-R3-CD, Cocke County (Tenn. Crim. App. June 8, 2000). The defendant in Chesteen pled guilty to theft over $10,000 and embezzlement by a clerk and master in official capacity, stemming from his withholding of funds from individuals for whom he was serving as financial conservator and his misappropriation of litigants' funds which were in the custody of the office of the clerk and master. Id., slip op. at 1-2. This court reviewed the factors relevant to the granting or denial of judicial diversion, and stated that several factors, including the defendant's amenability to correction, lack of criminal record, and positive social history, weighed

in favor of granting judicial diversion. <u>Id.</u>, slip op. at 15. However, in affirming the trial court's denial of diversion, we considered the following:

> Weighing negatively for diversion are the circumstances of the offense and the interests of the public and the accused. We are particularly concerned about the aggravated nature of the defendant's crimes in that they took place over a course of years, involved fraud upon the courts, destruction of records, and covert bank accounts. When the circumstances of the offense are considered in connection with the interests of the public in seeing meaningful punishment meted out for a crime involving large sums of money taken in the manner as was done here, it is clear that the public's interests are not served by judicial diversion in this case.

<u>Id.</u> Likewise, we conclude that the interests of the public are not served by a grant of judicial diversion in the present case and that the record supports the trial court's denial of judicial diversion.

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE