# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT JACKSON
## Assigned on Briefs March 3, 2009

## STATE OF TENNESSEE v. MAURICE JONES

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-01632      Paula Skahan, Judge**

**No. W2008-01877-CCA-R3-CD  - Filed February 8, 2010**

The defendant, Maurice Jones, entered an open plea agreement to one count of Class E felony sexual battery in the Shelby County Criminal Court.  Following a sentencing hearing, the trial court imposed a sentence of two years, all suspended to probation but sixty days to be served in the county workhouse.  As a special condition of his probationary sentence, the trial court ordered that the defendant is not allowed unsupervised contact with any minor child under eighteen years of age, including his own children.  On appeal, the defendant asserts that the trial court exceeded its authority in denying him unsupervised contact with his minor children.  Following review of the record, we conclude that the special condition is overbroad as written.  Accordingly, the case the remanded to the trial court for imposition of a more defined and less limiting condition.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Robert Wilson Jones, District Public Defender, and Harry E. Sayle, III, Assistant Public Defender (on appeal); and Andrew Bernstein, Memphis, Tennessee (at trial), for the appellant, Maurice Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; William L. Gibbons, District Attorney General; and Scot A. Bearup, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

The basic underlying facts supporting the conviction, as recited by the State at the guilty plea hearing, are "that on the period of time set out in the indictment[, October 17, 2006, to October 17, 2007,] the defendant . . . was residing in the residence with the minor victim as a stepfather, and that during that period of time [the defendant] did have sexual contact with the victim." Based upon these actions, the defendant was indicted by a Shelby County grand jury for one count of sexual battery.

Subsequently, the defendant pled guilty as charged, with the agreement specifying that the sentence, including the appropriateness of judicial diversion, was to be determined by the trial court.

At the sentencing hearing, the State introduced victim impact statements from the victim and her mother, as well as a letter from the victim's treating psychologist. Also introduced were the presentence report, the defendant's psychosexual evaluation, and his honorable discharge from the army. Additionally, the defendant testified. He acknowledged that he had committed sexual battery against the victim, the daughter of his live-in girlfriend, who had lived with him for six years and who viewed him as a father figure. He testified that, following the abuse, the victim and her mother moved to Minnesota. In contradiction to statements contained in the victim impact statement, the defendant denied that he had penetrated the victim, that he had ejaculated in the victim's presence, or that he had been naked in the victim's bed. The defendant insisted that he had only fondled the victim's breasts and buttocks. Moreover, the defendant disputed the victim's statement that the acts continued for more than two years and stated that he had fondled her no more than ten times over less than a one-year period. He also testified that he had stopped the abuse approximately a month and a half prior to the victim reporting it. Moreover, he related that, following his arrest, he had sought counseling. Finally, he testified that, after he was charged, the Department of Human Services conducted an investigation but did not remove his children from his care.

The defendant testified that he received an honorable discharge from the army after four years of service when his wife died of cancer in order to assume care of his four minor children, who were ages seven, five, three, and one. According to the defendant, he retains custody of these children, now fourteen, twelve, ten, and eight years old and is the sole provider of support and care to them. He acknowledged that he has been gainfully employed less than two weeks in the prior seven years and that his main source of income is survivorship benefits. He testified that he has no prior criminal record but acknowledged

-2-

that, after the instant charge, he had been arrested for DUI, violation of the implied consent law, and simple possession of marijuana. The presentence report admitted into evidence supported this testimony.

The trial court also reviewed the psychosexual evaluation which was submitted. The report indicated that the defendant was at an extremely low risk to reoffend. However, the examining doctor did indicate that being the sole caretaker to his children might elevate the risk. The doctor further noted that procedures needed to be taken to ensure that the defendant is not alone with his children.

After hearing the evidence presented, the trial court denied the defendant's request for diversion and imposed a sentence of two years, suspended to probation following service of sixty days. As a special condition of that probation, the trial court ordered that the defendant was to have "no unsupervised contact with the defendant's minor children or any child under eighteen years of age." The defendant has timely appealed.

**Analysis**

On appeal, the defendant raises the single issue of whether the trial court exceeded its authority in denying the defendant unsupervised contact with his minor children, which he describes as an unauthorized condition of probation. He contends that the condition is not reasonably related to the rehabilitation of the defendant and "is destructive of the natural family, and unreasonably restricts [the defendant's] freedom to exercise his responsibilities as a parent."

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In the event the record fails to show such consideration, the review of the sentence is purely *de novo*. *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the

sentence imposed. *Ashby*, 823 S.W.2d at 169.

The Sentencing Act provides that "the trial court has great latitude in formulating punishment, including the imposition of conditions of probation." *State v. Burdin*, 924 S.W.2d 82, 85 (Tenn. 1996). However, the primary purpose of a sentence of probation "is rehabilitation of the defendant," *id*. at 86, and the conditions or probation must be suited to this purpose. "Once the trial judge determines that probation is justified under the circumstances, the conditions imposed must be reasonable and realistic and must not be so stringent as to be hard, oppressive or palpably unjust." *Stiller v. State*, 516 S.W.2d 617, 620 (Tenn. 1974). The Act does not grant to the trial court "unfettered authority" to impose any condition on the defendant's probation but limits the court's discretion to "the bounds of traditional notions of rehabilitation." *Burdin*, 924 S.W.2d at 87; *see also State v. Mathes*, 114 S.W.3d 915, 918 (Tenn. 2003) (disapproving probation condition that did "not serve either the goal of rehabilitation or the goal of deterrence"); *State v. Robinson*, 139 S.W.3d 661, 666 (Tenn. Crim. App. 2004). That being said, however, the burden of demonstrating the impropriety of a probation condition rests with the defendant. *Burdin*, 924 S.W.2d at 84.

In support of his argument, the defendant relies upon *State v. Robinson*, a case in which a licensed pharmacist with no prior criminal record received probation after illegally disbursing controlled substances to a romantic interest over a period of time. *Robinson*, 139 S.W.2d at 663. The trial court imposed a condition which precluded his practicing pharmacy. *Id*. at 666. A panel of this court found that the condition was: (1) punitive and not rehabilitative; (2) was not based upon concerns of future criminality; (3) was unnecessary and overbroad in light of the regulatory authority of the Tennessee Board of Pharmacy; and (4) was unduly restrictive in preventing lawful employment. *Id*. at 667. The defendant likens the instant condition to the one in *Robinson,* asserting: he also has no prior criminal record; the crime was against only one person; he will be regulated by the Board of Probation and Parole; the Department of Human Services found no reason to remove his children; and the condition deprives him of a basic right, that being the right to exercise parental privileges and responsibilities.

The State disagrees and asserts that the defendant's case is more akin to the facts of *State v. James Robert Lawson*, No. E2001-01415-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Jul. 5, 2002). In *Lawson*, the defendant was a father convicted of child abuse for slapping his daughter in the face, knocking her to the ground, and hitting her with a belt. *James Robert Lawson*, No. E2001-01415-CCA-R3-CD. The trial court, as a condition of probation, ordered that the defendant could not live in the same household with a small child. *Id*. The State contends that, like in *Lawson*, the defendant was convicted "of a heinous crime against a minor child who viewed the defendant as a 'father figure.'" The State further likens the two cases based upon the statement by the doctor in the defendant's psychosexual

evaluation that procedures need to be implemented to ensure adequate supervision for the defendant's minor children. The State contends that the instant condition: (1) reasonably relates to the defendant's crime; (2) is rehabilitative in purpose; (3) is based upon concerns of future criminality; and (4) is not unduly restrictive.

After review of the record and relevant case law, we are unable to adopt either the State's or the defendant's argument. The defendant's argument and reliance upon *Robinson* is misplaced, as we fail to see a comparison between an employment condition versus one utilized to protect children from abuse, as well as regulation by the Board of Pharmacy versus the Board of Probation and Parole. Nonetheless, while we do agree with the State that the instant case is more akin to the facts in *Lawson*, we are also precluded from concluding that the condition in this case is proper. Basically, we conclude that the condition of probation at issue, that the defendant have no unsupervised contact with his own minor children or any child under the age of eighteen, is overbroad, is not properly defined, and is unduly restrictive.

The problem arises with the term "unsupervised contact." The failure to define the term "unsupervised contact" creates problems with clarity for the defendant to know his restrictions and with enforceability, leading to an unjust result. As written, the condition would preclude any sort of unsupervised communication between the defendant and any person under the age of eighteen, including but not limited to telephone conversations, emails, and letters. Taken to the extreme, it would also preclude the defendant from entering a retail establishment if the clerk was alone and happened to be under eighteen. While we would agree that the condition of probation is related to the offense, we must conclude that the condition, as written, is aimed more at protecting possible victims than at the defendant's rehabilitation. *See State v. Glenn E. Pressinell*, Nos. E2008-01290-CCA-R3-CD, E2008-01735-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Feb. 10, 2009). As written, the condition is too indefinite to be reasonable or realistic.

The confusion is evidenced from the record itself, as defense counsel was forced to ask for a clarification as to whether the defendant could speak with his child by phone. We realize that this is not the effect intended by the trial court, who expressed great and justifiable concerns for the safety of the defendant's minor children, and we recognize and applaud the effort taken to protect those children. However, we are confident that the trial court can fashion a condition which is both more defined and less limiting than the one imposed in order to accomplish that goal.

**CONCLUSION**

Because the trial court's imposition of the challenged condition of probation is

overbroad, we remand to the trial court with instruction to fashion a more defined and less limiting condition.

_____
JOHN EVERETT WILLIAMS, JUDGE