IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 1, 2009

## STATE OF TENNESSEE v. CORTERRIUS WORTHY

**Direct Appeal from the Criminal Court for Shelby County**
No. 08-06051     James M. Lammey, Jr., Judge

_____

**No. W2009-00761-CCA-R3-CD  - Filed April 9, 2010**

_____

The defendant, Corterrius Worthy, appeals the sentencing decision of the Shelby County Criminal Court. The defendant entered an open guilty plea to one count of robbery, a Class C felony. Following a hearing, the trial court denied the defendant's application for judicial diversion and sentenced the defendant to a term of three years. The court also denied the defendant's request for probation and ordered that the sentence be served in the Shelby County Workhouse. On appeal, the defendant argues that the trial court erred by denying judicial diversion and failing to grant probation. Following review of the record, we find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender, and Barry W. Kuhn, Assistant Public Defender, for the appellant, Corterrius Worthy.

Robert E. Cooper, Attorney General and Reporter; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The underlying facts of the case, as recited at the guilty plea hearing, are as follows:

[H]ad the case gone to trial, the State's proof would be that the offense occurred here in Shelby County, Tennessee. It happened on May 10th, 2008. On that

day[,] officers of the Shelby County Sheriff's Office responded to a robbery call at 6980 Holmes.

A witness[,] one Ms. Ann Gregory[,] would have testified that she just walked out of the [Walgreens] to her vehicle with her purse on her right shoulder. She was trying to get in the car when she felt a tug on her shoulder and the purse was taken from her while her back was turned. She turned around and observed a man get into a green vehicle and leave the scene eastbound on Holmes.

She was able to - - witness was able to provide a description of the suspect in the car, the tag number on the car. The car - - officers ran the tag number and found it registered to [the defendant]. Officers located [the defendant] and he matched the description of the suspect in the armed robbery. He was advised of his rights, offered the opportunity to give a statement. He did agree to give a statement, however, he denied doing the robbery but admitted he was the only person that drove that particular car that day.

Additionally, a witness positively identified him from a photo lineup as the person who took Ms. Gregory's purse on May 10th, 2008. . . .

The defendant was subsequently indicted by a Shelby County grand jury for one count of robbery. He later entered an open guilty plea to the charged offense and filed an application for judicial diversion. Following the trial court's acceptance of the plea, a sentencing hearing was held.

At the hearing, the State introduced the presentence report into evidence. The report indicated that the defendant was twenty-one years old at the time of sentencing and had no children. The report further indicated that the defendant had graduated from high school and completed some college. Additionally, the report reflected that the defendant had held various jobs through a temporary agency, as well as working at FedEx. Finally, the report indicated no prior convictions as an adult, although it noted three prior instances of juvenile misconduct. Additionally, the defendant gave a statement that he had no drug or alcohol problems.

The defendant was the only witness to testify at the hearing. He indicated that he believed he was entitled to diversion because he was "a respectable guy" with plans to join the navy. He acknowledged that he was unemployed at the time of sentencing and further asserted that he had complied with all terms of his release on bond imposed by the court. On cross-examination, the defendant denied all knowledge of the crime, indicating that it was committed by someone else and that he only pled guilty because it was in his best interest to do so. He testified that a friend living with him had access to his car keys on the day of the crime, and the defendant insisted that he had informed both the police and trial counsel of this fact. The defendant had no explanation as to why his then girlfriend informed police that he was not at home at the time of the crime, and he testified at the sentencing hearing that, in fact, he was at home when the crime was committed.

After hearing the evidence presented, the trial court denied the defendant's application for judicial diversion and imposed a sentence of three years. The court further denied the defendant's request for probation and ordered that the sentence be served in the workhouse. This timely appeal followed.

**Analysis**

On appeal, the defendant raises two challenges to the sentence imposed by the trial court. When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. The burden is on the defendant to show that the sentencing was improper. T.C.A. §40-35-401, Sentencing Comm'n Cmts.

When conducting a *de novo* review of the sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2006); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)).

## I. Judicial Diversion

First, the defendant contends that the trial court erred in denying his request for judicial diversion. Specifically, he contends that the court erred by relying solely on the circumstances of the offense, which he further asserts were not established on the record. "Judicial diversion is a legislative largess whereby a defendant adjudicated guilty may, upon successful completion of a diversion program, receive an expungement from all 'official records' any recordation relating to 'arrest, indictment or information, trial, finding of guilty, and dismissal and discharge' pursuant to the diversion statute." *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999). A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. T.C.A. § 40-35-313(a)(1)(B)(I) (2006). With these requirements in mind, it is undisputed that the defendant is statutorily eligible for judicial diversion. However, eligibility under the diversion statute does not ensure the grant of diversion.

The decision of whether to grant a request for judicial diversion lies within the sound discretion of the trial court, and this court will not disturb that decision on appeal absent an abuse

of discretion. *State v. Robinson*, 139 S.W.3d 661, 665 (Tenn. Crim. App. 2004). When a defendant challenges the trial court's denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In deciding whether to grant judicial diversion, the trial court must consider the following factors: (1) the accused's amenability to correction; (2) the circumstances of the offense; (3) the accused's criminal record; (4) the accused's social history; (5) the status of the accused's physical and mental health; (6) the deterrence value to the accused as well as others; and (7) whether judicial diversion will serve the ends of justice. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *Parker*, 932 S.W.2d at 958. Additionally, the trial court may consider the defendant's "attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement." *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993).

The record must indicate that the court has weighed all of the factors in reaching its determination. *Electroplating, Inc.*, 990 S.W.2d at 229. If the trial court denies a request for judicial diversion, it should state in the record "the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59. If the trial court "based its determinations on only some of the factors, it must explain why these factors outweigh the others." *Electroplating, Inc.*, 990 S.W.2d at 229. In *State v. Curry*, a pretrial diversion case, our supreme court held that the circumstances of the offense and the need for deterrence, alone, may justify a denial of diversion but only if all of the relevant factors have been considered as well. 988 S.W.2d 153, 158 (Tenn. 1999). "Judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under [Tennessee Code Annotated section] 40-15-105." *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In denying the defendant's request for diversion, the trial court made the following specific findings of fact:

> Well, under [Tennessee Code Annotated section] 40-35-313 and *State v. Parker*, there are certain factors I have to discuss regardless of whether I give judicial diversion or not. There are a number of these: the accused's amenability to correction[;] circumstance[s] of the offense[;] the accused's criminal record[;] the status of his physical and mental health[;] the deterrent value to the accused as well as others[; and] whether judicial diversion will serve the interest of the public as well as the accused.

> Among other things - the defendant's attitude. I guess I'll start with the defendant's attitude.

> He comes across as extremely arrogant and cocky. Defense counsel indicated that he was concerned that maybe he should have prepped him a little bit better and

-4-

let him be more humble, but I don't - I don't believe that would have been a good thing. I mean, I would like to know what they're really like, and you would think that someone would not have to be told to be humble when they are in a situation like this; but he does come across as extremely- extremely- just his air - defiant and in your face sort of - that's the feeling I get by - so, his attitude doesn't seem to be really good.

I mean, of course he could have gone to trial and still been eligible to ask for judicial diversion.

I just think that - he maintains that he did not do this, but the story that he gives just doesn't seem to add up, especially in light of the fact that he was positively identified; and that's why I asked that this sheriff's office photo spread be entered in because he was positively identified; and I see nothing suggestive about this photo spread. He was positively identified after his car tag - his car is seen leaving the scene of the robbery. So, I don't believe what he had to say on the witness stand.

His behavior, since arrest, has been good. He has attempted to - it says he wants to get in the navy, which is good.

He did do what the daily reporting center told him to do. So, that's a plus.

His home environment - he's had a few contacts with juvenile court but nothing real major that I would - that I could say -

He does - he presents- he seems like a very intelligent young man.

No history, that I can see, of any type of drug usage.

His emotional stability seems to be okay, I suppose; although I think that the way that he answers some of the questions, it was evidence to me he was very intelligent - cunning, I guess is a good word to use.

His part employment - exactly what that was . . . But he had attended some college. Paramount [S]taffings. Select [S]taffing. Position cancelled on both.

Of course, going to an agency, I think is a dead end. I don't think that was a wise choice going to, but at least he was attempting to get some work.

The family responsibilities - it doesn't seem like there was anything there against him. I think it's good that he doesn't have illegitimate kids all over the place, which is a rarity these days.

There's no - nothing- attitude to law enforcement has not been addressed - there's nothing in the record.

Nor was there anything in the record to show how pervasive this is in the community to show deterrent value to the accused as well as others.

Social history, as I said, it doesn't seem too bad.

Criminal record, obviously is something I have to consider. He has a couple of contacts. He said he's never been in trouble, but I think what he meant is he's never been convicted of anything. But even so, the juvenile record isn't bad.

The problem I am having in granting judicial diversion is the circumstances of the offense. I know of one case, because I was involved in it, where a little old lady was knocked down exactly the same way - got her purse; and now that young man is serving life in prison because the woman hit her head and died. And the young man who did it is serving life in prison for murder in the perpetration of a felony; and that very well could have been the case here. That's the problem I'm having with this.

First of all, I believe that the defendant is the one who perpetrated this crime; and so, you know, it's a very, very serious - and I think attacking a little old lady to take her purse shows a very, very depraved heart. And as much as he appears to be the type of person that - by looking at the young man, he is dressed well; he's well spoken. When you look behind it - when you look at the fact of this - when you try to imagine or think of a person who would do this sort of thing - how - well, what type of person would do something like this? - the type of person that would do something like this, I don't think is the type of person who is deserving of diversion. I think there is some case law that says the accused's amenability to correction may outweigh all the others.

But when you think of - when you think of someone who commits a crime like this, what type of person that would be. I mean, I guess it's one thing that could be walking by a vehicle, seeing a wallet on the seat - money sticking out of the wallet and just, you know, one time - you know, a guy, - "I need $50 - there it is - take it," that can be understandable. But for someone to watch a little old lady and wait and approach and pull her down or knock her down to the ground, that takes an extraordinary lack of feeling, and I don't think that anyone who would commit something like that is amenable to correction.

So, in looking at all of these, I think the circumstances of the offense far, far outweigh any of the others; and because of that, looking at the interest of the public,

I think it outweighs the interest of the accused in [getting] judicial diversion. So, I'm going to show judicial diversion denied.

First, we address the defendant's contention that the "circumstances of the offense" were not established by the record. He specifically challenges that the record failed to establish that the victim was a seventy-seven-year-old "little, old lady" or that she was "knocked down." We reject the defendant's argument. While it is true that this specific information is not contained in the recitation of the facts stated at the guilty plea hearing, it is contained within the record. The presentence report, which was admitted without objection by the defendant, indicates that a witness observed the defendant "approach the victim[,] pushing her to the ground[,] and stealing her purse." Moreover, the State, in response to a question from the court, indicated that the victim was seventy-seven years old. While we agree with the defendant that arguments of counsel are not substantive evidence, this statement was not offered in the course of arguments but, rather, as a response to a question. *Cf. State v. Howell*, 868 S.W.2d 238, 257 (Tenn. 1993) (statements of counsel offered during argument are not substantive evidence). Moreover, the defendant made no objection to the statement at the time; thus, any argument regarding its admission is waived. *See* Tenn. R. App. P. 36(a).

In support of his argument that the trial court abused its discretion in denying diversion, the defendant relies upon: (1) the positive factors enumerated by the trial court; (2) that an admission of guilt is not a prerequisite to diversion; and (3) that the court made no finding with regard to the defendant's amenability to correction. According to the defendant, the trial court improperly denied diversion in this case based solely upon the circumstances of the offense. We disagree.

In very extensive findings, the trial court noted its consideration of the required factors and the weight which the court felt they were entitled to. In fact, the court acknowledged that many of the factors did weigh in the defendant's favor. However, the court was very explicit in its findings that the circumstances of the offense, the defendant's attitude, and his lack of truthfulness carried more weight and supported the denial.

Moreover, we disagree with the defendant's assertion that the trial court required an admission of guilt as a prerequisite to a granting of diversion. The defendant is correct that case law is clear that such an admission is not a prerequisite. *State v. Lewis*, 978 S.W.2d 558, 567 (Tenn. Crim. App. 1997). However, our reading of the trial court's findings do not indicate that the court required such. Rather, our reading indicates that the court was considering the defendant's denials in terms of credibility, a factor which is properly considered. *Anderson*, 857 S.W.2d at 572 (upholding denial of judicial diversion on the basis of untruthfulness); *see also State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994) (holding consideration of a defendant's candor while testifying was probative of prospects for rehabilitation).

We must also reject the defendant's contention that the trial court failed to consider the defendant's amenability to correction. While the State concedes that the court made no explicit finding with regard to this issue, we disagree. In its findings, the trial court clearly stated that it believed someone who commits this type of depraved crime is not amenable to correction.

Moreover, as noted by the State, even absent this statement, the record would amply support the finding. As noted, dishonesty and lack of candor are indicators of a lack of amenability to correction. *Dowdy*, 894 S.W.2d at 305. The trial court's statement on the record is explicit in that he found the defendant was dishonest and not a credible witness.

Thus, based upon the foregoing, we reject the defendant's contention that the trial court denied diversion solely on the basis of the circumstances of the offense. The court considered all the required factors and addressed their respective weights. The court determined that the circumstances of the offense, along with the defendant's amenability to correction, attitude, and lack of honesty with the court outweighed the positive factors in favor of diversion. We find nothing in the record which indicates that the decision was an abuse of discretion.

## II. Probation

Next, the defendant contends that the trial court also committed error by denying him a probationary sentence and ordering that he serve the sentence in the workhouse. Again, the defendant relies upon the argument that the trial court improperly denied probation based solely upon the circumstances of the offense.

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). The following considerations provide guidance regarding what constitutes "evidence to the contrary:"

> (A)   Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B)   Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C)   Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. . . .

T.C.A. § 40-35-103(1); *see also State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. T.C.A. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. T.C.A. § 40-35-103(5).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. T.C.A. § 40-35-303(b). No criminal defendant is automatically entitled to probation as a matter of law. T.C.A. § 40-35-303(b), Sentencing Comm'n Cmts; *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002). In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. *Id.*

With regard to probation, the trial court stated as follows:

> Now, we've talked about probation. Unfortunately, for the defendant, I believe that - I believe that situations like this, it would seriously depreciate the seriousness of the offense to grant probation. I just can't see it. I mean, it is a depraved heart - - someone that would do something like this just doesn't deserve, in my opinion - it's about like stealing from a widow. I don't think that there's any place in our judicial system for someone who would steal from a widow or steal from an old lady - especially knocking them to the ground and taking their purse.

> If you think of that act - and I'm just imagining what it would be like to be a little old lady with a purse. You know, a purse has everything that belongs to someone in it; and it's a sacred place, really. There are things in there that belong just to that person, and stealing this off a counter where she is standing looking at some items would be bad enough; but physically grabbing it and forcing this person to the ground to take it, I don't believe warrants probation, either. I think the seriousness of the offense - well, I believe it would - it would depreciate the seriousness of the offense to give probation as well.

There is no dispute that the defendant was eligible for a sentence of probation based upon his receiving a three-year sentence. However, the trial court found that the defendant had failed to establish his suitability. As noted, the defendant contends that the court improperly denied probation based solely upon the "seriousness of the offense." We agree that in order for probation to be properly denied based solely upon the nature offense, the criminal act, as committed, must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." *State v. Cleavor*, 691 S.W.2d 541, 543 (Tenn. 1985). Initially, we are unable to conclude that the decision to deny probation was based *solely* on the seriousness of the offense. While we agree that this was a primary concern, the court also clearly weighed the defendant's amenability to correction and lack of candor, as we concluded in our review of judicial diversion. Regardless, we give credence to the trial court's ruling that the offense was of an egregious nature.

The defendant physically assaulted an elderly woman in a parking lot, knocking her to the ground, in order to steal her purse. As noted by the trial court, the defendant's crime amounted to a showing of "a very, very depraved heart" and showed "an extraordinary lack of feeling." From these statements, it is apparent that the trial court found the defendant's actions to be reprehensible. As such, we conclude that the record before us supports the denial of probation. The defendant has simply failed to carry his burden of establishing that probation would "subserve the ends of justice and the best interests of both the public and the defendant." *See State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

## CONCLUSION

Based upon the foregoing, the judgment of the Shelby County Criminal Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE