# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 14, 2013

## STATE OF TENNESSEE v. JOHN NOLAN SUNDE

**Appeal from the Criminal Court for Williamson County**
**No. I-CR055635     Robbie Beal, Judge**

---

## No. M2012-02395-CCA-R3-CD - Filed February 6, 2014

---

Appellant, John Nolan Sunde, was indicted by the Williamson County Grand Jury for aggravated assault and domestic assault. After a jury trial, Appellant was convicted of both charges. The trial court merged the convictions into a single conviction for aggravated assault and sentenced Appellant to three years in incarceration. The trial court suspended the sentence "on time served" and ordered Appellant to attend an anger management class and ordered him to have no contact with the victim. Appellant's motion for new trial was denied, and he initiated this appeal. On appeal, he argues: (1) that the evidence was insufficient to support his conviction because the State failed to prove serious bodily injury; (2) the trial court erred in admitting multiple photographs of the victim; and (3) the trial court erred in sentencing Appellant to anger management class. After a review of the record, we conclude that the evidence is sufficient to support the jury's finding that the victim suffered serious bodily injury to sustain the conviction for aggravated assault; the trial court did not abuse its discretion in admitting photographs of the victim's injuries at trial; and the trial court properly ordered anger management classes as a condition of probation. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Vanessa P. Bryan, District Public Defender and Susan V. Logan, Assistant Public Defender for the appellant, John Nolan Sunde.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant

Attorney General; Kim R. Helper, District Attorney General, and Tammy J. Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

Williamson County Sheriff's Officer Corporal Troy Gifford received a radio dispatch for a domestic violence call on East Moran Road around 11:00 p.m. on April 10, 2011. The home was shared by the victim, Doris Erickson, and Appellant. They lived together in the residence as a couple, and had been together for approximately ten years.

Corporal Gifford quickly responded to the call. As he arrived, he knocked on the front door of the residence. The victim came out on the front stoop. She was acting "extremely excited" as she tried to explain what happened in an "extremely nasally" voice. Corporal Gifford had a hard time understanding the victim at that time.

When the victim let the police into the residence, they were able to see "very visible marks to her face." Corporal Gifford described the victim's injuries as a "bruised and extremely swollen [bottom] as well as the top of the lip." The victim's nose was "flattened and extremely swollen." On the bridge of the victim's nose there was a "very dark purple bruise that went from eye socket to eye socket." Corporal Gifford stated that there was "hemorrhaging in the left eye" around the outside of the iris and bruising on her forehead.

The victim informed officers on the scene that Appellant beat her up. At that time, she informed officers that she thought Appellant was upstairs in the residence. Appellant was found upstairs lying on a bed and reading a book. Officers described Appellant as "matter of fact" and "nonchalant."

The victim refused to be transported for medical treatment but received medical treatment on the scene from Emergency Medical Personnel.

As a result of the events that night, Appellant was indicted by the Williamson County Grand Jury with aggravated assault and domestic abuse.

At trial, the victim testified that she and Appellant had lived together for ten years. Leading up to the attack, the victim described their relationship as "tense" due to a "low performance review" Appellant received at work. The victim explained:

[Appellant] lost control. . . . I went over and asked him to go to bed because he would not come to bed, he was always writing emails [about his job], and then he lost his temper. He - it went so fast. You know he grabbed me, bent me over the pool table backwards, and then I found myself on the floor and the punches were so rapid that I think I lost consciousness for awhile, and then I - he let up - up off for a little bit. I don't know how long it went on, and I ran downstairs and called 911.

The victim stated that during the attack, Appellant held her arms down with one hand and punched her repeatedly with the other hand. The victim testified that she had bruises everywhere - on her back, face, arms, and knees. The victim admitted that she did not go to the hospital on the night of the attack because she was "so traumatized and in so much pain." The victim described her pain as a "ten plus." on a scale of one to ten. She just wanted to "lie down somewhere in the dark . . . like a wounded animal that tries to find a corner to hide in."

The next morning, the victim had a friend take her to a family doctor. From there, she was referred to an ear, nose, and throat specialist, Dr. Gregory Allen Mowery. The specialist informed the victim that her nose was broken and she needed surgery. The doctor could not perform the surgery until the swelling in the victim's nose subsided. That night, the victim went to a "safe house." She stayed at the safe house for three days. The days immediately following the attack were described by the victim as a "blur."

Detective Melissa Colvin interviewed the victim at the safe house and described the severity of her injuries, stating that it looked as though the victim had been drawn on with a black permanent marker on her face. The bruising was "very bad." She took several pictures of the victim's injuries. They were admitted at trial. Three days later, Detective Colvin described the color of the bruises as "greenish."

Dr. Mowery described the victim as "extremely bruised." He immediately placed her on antibiotics. Dr. Mowery explained that the victim had a "hematoma of her nasal septum where blood had accumulated under the tissue inside her nose" that required surgery. The left side of the nose was "completely occluded" and there was "an obvious fracture of [the victim's] external nasal bones that was visible as far as deformity." To correct the injuries, Dr. Mowery made incisions on the inside of the victim's nose to drain the blood and reduce swelling, sewed back the incisions, placed nasal splints inside the nose, manipulated the structure of the nose and septum inside the nose, and placed an external nasal splint. Dr. Mowery described the victim's injuries as "much more severe" than those he typically sees in sports-related injuries. In his opinion, it could take up to six months for the victim to heal from the surgery. He did not think that the victim's refusal to go to the emergency room

would have altered her treatment plan. Dr. Mowery did not think that the victim would have any long-term effects from the injuries that would affect her "function or significantly affect her appearance."

The victim testified that the healing process took a long time even after surgery to correct her broken nose. She still had "dark circle" bruises under her eyes nearly three months after the attack. The victim also testified that her nose was not quite as straight as it was before the surgery and her nostrils were shaped differently. Additionally, she continued to have panic attacks and nose bleeds and had scars on her knees.

Appellant testified at trial. He stated that the victim had a condition that affected her mood if she was fatigued. Appellant explained that she would "go berserk" when she was "up late at night." Appellant noticed the mood swings the first year of their relationship. Appellant stated that the victim would go on "rants" complaining about his son and ex-wife.

On the day of the incident, Appellant explained that he worked in the yard, had dinner with the victim, watched two movies with the victim, and then went to the bonus room to work on his computer around 8:00 p.m. This was normally when the victim went to bed. Appellant testified that, at least an hour later, the victim came from the bedroom in a "rant." Appellant was surprised to see her and tried to stand up from the recliner. He "lowered the footrest, swivelled to the left to get out, and as [he stood], she pushed [him] in the chest." In order to keep the victim from pushing him, Appellant grabbed her wrist. The couple fell. Appellant stated that he fell forward and the victim fell backward. Appellant's forehead hit the victim in the face the hardest. However, the rest of his body collided with the victim's body as well. Appellant stated that the victim was still "swinging and struggling," so he grabbed her wrists. The two struggled back and forth on the carpet, causing carpet burns. Appellant noticed blood on the victim's face, probably from her nose. Appellant eventually asked the victim if she had "done enough" and if she was "through." The victim told Appellant that she never wanted to see him again.

Appellant specifically denied striking the victim with his fist.

Appellant called his own medical expert, Dr. Suzanne Elaine Benson. She explained that at the time of the incident the victim was taking Mobic, a non-steroidal anti-inflammatory drug, that could increase bleeding tendency. In fact, one blow to a person's face could cause them to bruise. The victim was also taking Flonase and Allegra for allergies. Dr. Benson did not see anything in the medical records that would reflect that the victim was in "extreme pain." There was a notation for breathing issues due to allergies which was a problem that existed prior to the broken nose. There was no prescription for pain medication.

Appellant's son saw the victim in October after the accident and did not notice any differences in the victim's appearance.

At the conclusion of the proof, the jury convicted Appellant of both offenses as charged in the indictment. At the sentencing hearing, the trial court merged the convictions into a single conviction for aggravated assault. He sentenced Appellant as a Range I, standard offender to three years in incarceration, noting that Appellant had served from April 10, 2011, to July 16, 2012, in incarceration. The trial court ordered the sentence suspended for time served and placed Appellant on probation. The trial court also ordered Appellant to "attend and complete anger management class" and have "no contact whatsoever" with the victim.

Appellant appeals.

*Analysis*
*Introduction of Prejudicial Photographs of the Victim*

Appellant first complains that the trial court improperly admitted prejudicial photographs of the victim. Specifically, Appellant insists that the trial court "admitted into evidence a large number of photographs of Ms. Erickson that were taken by Detective Melissa Colvin over the objection of the defense." The State argues that Appellant waived the issue for failure object to the introduction of photographs at trial.

Prior to trial, counsel for Appellant filed a motion in limine seeking to exclude the photographs of the face of the victim as more prejudicial than probative. The trial court ruled on the motion in limine. Counsel for Appellant argued that there were too many photographs of the victim's facial injuries and that they would only serve to "inflame the jury and excite their passions and sympathy" for the victim. After hearing argument from counsel, the trial court reviewed approximately fifteen photographs of the victim's injuries. The trial court made extensive findings, determining in part:

> These pictures do demonstrate that the injury could be considered by the jury as significant. They could certainly be used by the jury to show disfigurement. They could be used by the . . . - - jury with the help of an expert to show that there was a loss of a bodily function. I'm assuming the nasal passages.
>
> [T]here's no way that verbal testimony can replace the value, the evidentiary value, of a photograph. Are some - again, are the pictures prejudicial to the defense? Yes. However, do they have significant relevant value that goes directly to an element of the offense? Yes. And to - - and to keep the State

-5-

from being able to put forward those pictures would unnecessarily and inappropriately bind their hands in this case and take away a fairly essential part of the case.

The Court's going to allow most of the pictures to come in. The Court has one, two - - has taken out four pictures simply because I believe they are redundant.

At trial, Detective Colvin testified as to the extent of the victim's injuries and explained that she took photographs of those injuries. As the photographs were moved into evidence, the trial court stated that "[a]ny objections are noted for the record and reserved." The trial court then went on to admit the photographs. The record does not contain a formal objection to the introduction of the photographs from Appellant during trial.

The State insists that Appellant failed to object to the introduction of the photographs at trial and, as a result, waives any issue with regard to the admissibility of the photographs on appeal. Ordinarily, a defendant's failure to make a contemporaneous objection during trial constitutes a waiver of an issue. Tenn. R. Evid. 103(a)(1); Tenn. R.App. P. 36(a) (stating that "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Cravens*, 764 S.W.2d 754, 757 (Tenn.1989). However, although the State correctly observes that Appellant should make a contemporaneous objection to the photographs during trial, Appellant objected to the photographs prior to trial in a motion in limine. For the purpose of preserving the record for appeal, we consider an objection to be contemporaneous if trial counsel objects in the form of a motion in limine and obtains a ruling on the issue from the trial court. *State v. Alder*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001). Thus, this issue was preserved for appellate review.

The admissibility of relevant photographs of victims and the crime scene is within the sound discretion of the trial court, and the court's ruling on admissibility will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Carruthers*, 35 S.W.3d 516, 576-77 (Tenn. 2000); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). As our supreme court stated in *Carruthers*, the modern trend is to vest more discretion in the trial court's rulings on admissibility. *Carruthers*, 35 S.W.3d at 577 (citing *Banks*, 564 S.W.2d at 949).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence "may be excluded

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. *Carruthers*, 35 S.W.3d at 577. The court must still determine the relevance of the visual evidence and weigh its probative value against any undue prejudice. *Id.* The term "undue prejudice" has been defined "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Banks*, 564 S.W.2d at 950-51. (quoting Fed. R. Evid. 403, Advisory Comm. Notes). Photographs of the nature and extent of the victim's injuries were relevant to the issue of bodily injury. The photographs assisted the expert testimony regarding the injuries. Although the photographs are unpleasant to view, we conclude that the probative value of the photographs is not substantially outweighed by their prejudicial effect and that the trial court did not abuse its discretion in allowing their admission. Appellant is not entitled to relief.

*Sufficiency of the Evidence*

Appellant challenges the sufficiency of the evidence to support his conviction for aggravated assault. Specifically, he argues that serious bodily injury was not proven by the State. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State*

*v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

## *A. Aggravated Assault*

To convict Appellant of aggravated assault in this case, the jury must have found that Appellant intentionally or knowingly caused the victim to fear imminent bodily injury and caused serious bodily injury. *See* T.C.A. §§ 39-13-101, 102.[1] "'Serious bodily injury' means bodily injury that involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; protracted or obvious disfigurement; (E) protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty; or (F) A broken bone of a child who is eight (8) years of age or less . . . ." T.C.A. § 39-11-106(a)(34).

One acts "knowingly" when, with respect to a result of the person's conduct, the person "is aware of the conduct or is practically certain that the conduct will cause the result, irrespective of his or her desire that the conduct or result will occur." T.C.A. § 39-11-302(b), Sentencing Comm'n Cmts.

Appellant's main argument with regard to the sufficiency of the evidence to support the conviction for aggravated assault challenges the degree to which the victim suffered serious bodily injury. He cites *State v. Sims*, 909 S.W.2d 46 (Tenn. Crim. App. 1995), as an analogous case. In *Sims*, the victim suffered a broken nose, facial laceration, and bruised cheekbone as the result of a robbery. *Id.* at 48. The victim was not given any pain medication and did not require surgery. The victim eventually had two teeth pulled several days later. *Id.* at 48-50. This Court, in determining whether the victim's injuries constituted "serious bodily injury," applied the doctrine of *ejusdem generis* to the statute defining "serious bodily injury," stating:

> According to the Sixth Edition of Black's Law Dictionary, *ejusdem generis* means when words follow an enumeration of classes of things the words should be construed to apply to things of the same general class as those enumerated. Therefore, the enumerated portions of the definition of serious

---

[1]Tennessee Code Annotated section 39-13-102 was modified in 2013 to require that a defendant intentionally or knowingly commits an assault that "results" in either serious bodily injury to another, the death of another, or involved the use or display of a deadly weapon or "[w]as intended to cause bodily injury to another by strangulation or bodily injury by strangulation was attempted." 2013 Tenn. Pub. Act Ch. 461. This amendment took effect on July 1, 2013, after Appellant's trial.

bodily injury should be read as coming from the same class of injuries. We do not believe that the pain commonly associated with a broken nose is extreme enough to be in the same class as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty.

*Id.* at 49 (footnotes omitted). The *Sims* court noted that pain is difficult to quantify or measure. *Id.* However, as this Court has stated, "the subjective nature of pain is a question of fact to be determined by the trier of fact, in this case the jury." *State v. Eric A. Dedmon*, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at *5 (Tenn. Crim. App., at Nashville, Feb. 23, 2006).

We disagree with Appellant's argument. While the evidence of serious bodily injury was not as overwhelming as it could have been where the victim was shot or maimed, we conclude that the evidence, in a light most favorable to the State, proved that the victim certainly suffered extreme physical pain, which constitutes serious bodily injury. *See* T.C.A. § 39-11-106(a)(34). Appellant pushed the victim and hit her repeatedly, causing a broken nose, severe bruising over several parts of her body, and scars to her knees. Unlike the victim in *Sims*, the evidence at trial proved that the victim required surgery on her nose and endured a long healing process to the bruises on her face as a result of Appellant's actions. She described her pain as a "ten-plus." The task of determining the severity of pain suffered is within the province of the jury as a question of fact. *State v. Barnes*, 954 S.W.2d 760, 765-66 (Tenn. Crim. App. 1997). This issue is without merit. Appellant is not entitled to relief.

*Sentencing*

Appellant insists that the trial court erred by ordering Appellant to attend an anger management course as a condition of his probation because it was the trial court's "policy" to order anger management in domestic abuse cases. The State counters that the trial court did not abuse its discretion.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the

evidence, if any, received at the trial and the sentencing hearing; (2) the presence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706, n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

Further, a trial court is granted broad discretion in its imposition of conditions of probation. *See* T.C.A. § 40-35-303(d); *Stiller v. State*, 516 S.W.2d 617 (Tenn. 1974). "The Sentencing Act provides that 'the trial court has great latitude in formulating punishment, including the imposition of conditions of probation.'" *State v. Jones*, 328 S.W.3d 520, 523–24 (Tenn. Crim. App. 2010) (quoting *State v. Burdin*, 924 S.W.2d 82, 85 (Tenn. 1996)). However, the primary purpose of a sentence of probation "is rehabilitation of the defendant," *Burdin*, 924 S.W.2d at 86, and the conditions of probation must be suited to this purpose. "Once the trial judge determines that probation is justified under the circumstances, the conditions imposed must be reasonable and realistic and must not be so stringent as to be harsh, oppressive or palpably unjust." *Stiller*, 516 S.W.2d at 620. Specifically, the trial court can require a defendant to comply with such things as family responsibilities, vocational training, restitution, medical or psychiatric treatment, among others. *See* T.C.A. § 40-35-303(d).

In the case herein, the trial court considered Appellant's age, experience, and circumstances while noting the severity of the injuries sustained by the victim and the verdict of the jury. The trial court noted that the attack on the victim appeared to have been the result of an angry outburst, deeming a course in anger management appropriate as a condition of probation. The trial court commented that it could not "think of a time I did not, order an anger management class as a result of a domestic violence assault, especially one of this magnitude." The trial court did not abuse its discretion. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgement of the trial court is affirmed.

_____

JERRY L. SMITH, JUDGE